1  Shana E. Scarlett (217895)
   HAGENS BERMAN SOBOL SHAPIRO LLP
2  715 Hearst Avenue, Suite 202
   Berkeley, CA 94710
3  Telephone: (510) 725-3000
   Facsimile: (510) 725-3001
4  E-mail: jeff@hbsslaw.com
           shanas@hbsslaw.com
5
   Elizabeth A. Fegan
6  Daniel J. Kurowski
   HAGENS BERMAN SOBOL SHAPIRO LLP
7  1144 W. Lake St., Suite 400
   Oak Park, IL 60301
8  Telephone: (708) 628-4949
   Facsimile: (708) 628-4950
9  E-mail: beth@hbsslaw.com
           dank@hbsslaw.com
10
   Steve W. Berman
11 Craig R. Spiegel
   HAGENS BERMAN SOBOL SHAPIRO LLP
12 1918 Eighth Avenue, Suite 2300
   Seattle, WA 98101
13 Telephone: (206) 623-7292
   Facsimile: (206) 623-0594
14 E-mail: steve@hbsslaw.com
           craig@hbsslaw.com
15
   Attorneys for Plaintiffs
16
   [*Additional Counsel Listed on Signature Page*]
17
                      UNITED STATES DISTRICT COURT
18
                     NORTHERN DISTRICT OF CALIFORNIA
19
   DIANE BENYA and DEBBIE MILLIKAN,          )   No.
20                                           )
                              Plaintiffs,    )   COMPLAINT
21                                           )
           v.                                )
22                                           )   JURY TRIAL REQUESTED
   AURORA DAIRY CORPORATION d/b/a            )
23 AURORA ORGANIC DAIRY, COSTCO              )
   WHOLESALE CORP., SAFEWAY, INC. and        )
24 WILD OATS MARKETS, INC.,                  )
                                             )
25                            Defendants.    )
   ──────────────────────────────────────── )
26

27

28

010004-10 410178 V1

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................. 1

II. PARTIES ............................................................................................................................... 2

    A. Plaintiffs .................................................................................................................... 2

    B. Defendants ................................................................................................................. 2

III. JURISDICTION AND VENUE ........................................................................................... 3

IV. FACTUAL ALLEGATIONS ............................................................................................... 3

    Aurora Dairy .......................................................................................................................... 3

    A. Private Label Organics ............................................................................................. 9

        1. Costco's "Kirkland" Brand ......................................................................... 10

        2. Safeway's "O Organics" Brand .................................................................. 12

        3. Wild Oats' Store Brand .............................................................................. 14

    B. Injury to Plaintiffs and The Other Members of The Classes .................................. 16

V. CLASS ALLEGATIONS .................................................................................................... 17

VI. CAUSES OF ACTION ....................................................................................................... 20

    A. Counts Against Aurora ............................................................................................ 20

        COUNT 1: Violation of the Colorado Consumer Protection Act .......................... 20

        COUNT 2: Violation of State Consumer Protection Laws .................................... 23

        COUNT 3: Breach of Express Warranty ................................................................ 29

        COUNT 4: Breach of Implied Warranty of Merchantability ................................. 31

        COUNT 5: Negligence Per Se ................................................................................ 34

        COUNT 6: Negligent Misrepresentation ................................................................ 36

        COUNT 7: Unjust Enrichment ............................................................................... 37

    B. Counts Against Costco ............................................................................................ 38

        COUNT 8: Violation Of The Washington Consumer Protection Act .................... 38

        COUNT 9: Violation Of State Consumer Protection Laws .................................... 40

        COUNT 10: Breach Of Express Warranty ............................................................. 45

        COUNT 11: Breach Of Implied Warranty of Merchantability ............................. 46

COUNT 12 Negligent Misrepresentation ................................................................. 47

COUNT 13 Unjust Enrichment ................................................................................ 48

C.    Counts Against Safeway ........................................................................................ 49

COUNT 14: Violation of the California Unfair Competition Law, ...................... 49

COUNT 15: Violation of the California Consumer Legal Remedies Act ............ 51

COUNT 16: Violation of State Consumer Protection Laws ................................. 53

COUNT 17: Breach of Express Warranty ............................................................. 58

COUNT 18: Breach of Implied Warranty of Merchantability .............................. 59

COUNT 19: Negligent Misrepresentation .............................................................. 60

COUNT 20: Unjust Enrichment ............................................................................. 62

D.    Counts Against Wild Oats ..................................................................................... 63

COUNT 21 Violation of the Colorado Consumer Protection Act ........................ 63

COUNT 22: Violation of State Consumer Protection Laws ................................. 65

COUNT 23: Breach of Express Warranty ............................................................. 69

COUNT 24: Breach of Implied Warranty of Merchantability .............................. 71

COUNT 25: Negligent Misrepresentation .............................................................. 71

VII.    PRAYER FOR RELIEF ................................................................................................... 73

COMPLAINT

010004-10 410178 V1

1    Plaintiffs bring this action on their own behalf and on behalf of each of the Classes they

2    respectively seek to represent, based upon their own personal knowledge as to themselves and their

3    own acts and upon information and belief and the investigation of their counsel as to all other

4    matters, and allege as follows:

5    **I.    INTRODUCTION**

6    1.    Defendant Aurora Dairy Corporation d/b/a Aurora Organic Dairy ("Aurora")

7    produced, marketed, and sold organic milk and milk products to Plaintiffs and the other members

8    of the Classes through, among others, Defendant Retailers Costco Wholesale Corp. ("Costco"),

9    Safeway, Inc. ("Safeway"), and Wild Oats Markets, Inc. ("Wild Oats")[1] under their respective

10   store-brand labels (collectively, "Milk Products"). Plaintiffs and other members of the Classes

11   paid more for Defendants' Milk Products than they would have paid for conventional milk.

12   2.    Aurora made numerous representations and warranties about the manner in which

13   its Milk Products were produced. Many of these representations and warranties were false and

14   deceptive. Aurora also failed to disclose and omitted material facts about the manner in which its

15   Milk Products were produced.

16   3.    Aurora's misrepresentations and omissions were first discovered by the United

17   States Department of Agriculture ("USDA") and disclosed by the USDA in 2007. At that time,

18   and despite Aurora's representations, the USDA disclosed that Aurora failed to implement or

19   maintain the very production practices that Aurora touted and advertised, such as providing the

20   dairy cows that produced the milk for its Milk Products with appropriate access to pasture,

21   ensuring that the dairy cows that produced its milk were only fed an organic diet, and ensuring that

22   the dairy cows that produced its milk were not given antibiotics or synthetic growth hormones.

23   4.    By misrepresenting and/or failing to disclose the conditions under which the Milk

24   Products were produced, Defendants breached express and implied warranties and engaged in one

25   or more unfair or deceptive acts or practices in violation of consumer protection laws. Plaintiffs

26   seek damages arising from Defendants' violations of state law.

27

---

[1]    Costco, Safeway, and Wild Oats may collectively be referred to herein as the "Retailer

28   Defendants."

COMPLAINT                                    - 1 -

010004-10 410178 V1

## II. PARTIES

### A. Plaintiffs

5. Diane Benya is a resident of the State of Oregon. During the relevant time period, Ms. Benya purchased one or more Milk Products in the State of Oregon. Those products include Wild Oats' store brand and Safeway's "O Organics" brands.

6. Debbie Millikan is a resident of the State of Hawaii. During the relevant time period, Ms. Millikan purchased one or more Milk Products in the State of Hawaii. Those products include Costco's "Kirkland" and Safeway's "O Organics" brands.

### B. Defendants

7. Aurora Dairy Corporation d/b/a Aurora Organic Dairy ("Aurora") is a Delaware corporation headquartered in Boulder, Colorado. Aurora marketed and sold its Milk Products nationwide throughout the United States. Aurora sold its Milk Products directly under the brand name "High Meadow" and through retailers under the store-brand names stated below.

8. Costco is a Washington corporation with its principal place of business in Issaquah, Washington. At the close of 2007, Costco operated 389 stores nationwide. Costco sold Milk Products produced by Aurora under Costco's brand name "Kirkland."

9. Safeway is a Delaware corporation with its principal place of business in Pleasanton, California. Safeway is one of the largest food and drug retailers in North America. Safeway has various wholly-owned subsidiaries including Randall's Food Markets, Tom Thumb, Car-Gottstein Foods Co., Dominick's Supermarkets, Inc., Vons, and Genuardi's Family Markets, Inc. (which are divisions of, and/or whose policies, finances, business practices and other affairs are controlled by, Safeway) and through which Safeway operates in Texas, Alaska, Illinois, California, Pennsylvania, New Jersey, and Delaware.[2] As of September 8, 2007, Safeway operated 1,738 stores in the Western, Southwestern, Rocky Mountain, and Mid-Atlantic regions of the

---

[2] Throughout this Complaint, Safeway and its subsidiaries are referred to collectively as "Safeway."

COMPLAINT                                                    - 2 -

010004-10 410178 V1

United States and in western Canada. Safeway sold Milk Products produced by Aurora under Safeway's brand name "O Organics."

10.     Wild Oats was a Delaware corporation with its principal place of business in Boulder, Colorado. Wild Oats, at its own stores or through a delivery service known as Peapod, sold Milk Products produced by Aurora under Wild Oats' store name.   Whole Foods acquired Wild Oats in or about August 2007; however, Wild Oats has represented that it maintains liability for these alleged claims.

## III.    JURISDICTION AND VENUE

11.     This Court has diversity jurisdiction over this class action lawsuit pursuant to 28 U.S.C § 1332 as amended by the Class Action Fairness Act of 2005, because, upon information and belief, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and this lawsuit is a class action in which some members of the Classes are citizens of states different than Defendants. *See* 28 U.S.C. § 1332(d)(2)(A).

12.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein described occurred within this judicial district.

13.     Intradistrict Assignment: Assignment to the San Francisco or Oakland division of this Court is appropriate because one Defendant's headquarters and principal place of business is in Pleasanton, California.   Because this action arises in the county of Alameda, pursuant to Northern District of California, Local Rule 3-2(d), assignment to either the San Francisco Division or the Oakland Division is proper.

## IV.    FACTUAL ALLEGATIONS

### Aurora Dairy

14.     Founded in 2003, Aurora's first and largest dairy farm is located in Platteville, Colorado, about 40 miles north of Denver.   At its peak, the Platteville farm had approximately

1    4,500 cows and a capacity to produce twenty million gallons of milk per year. Aurora also

2    operates dairy farms in other locations in Colorado, as well as in Texas.

3        15.     Aurora processes all of its milk in a plant located next to its Platteville farm. Milk

4    from Aurora's other dairy farms is transported to its Platteville plant in refrigerated trucks. Most of

5    this milk is then pasteurized or ultra-pasteurized, processed into whole, 2%, 1%, and skim

6    varieties, and packaged in half-gallon cartons. Aurora also processes some of the milk into other

7    milk products, including butter, cream, and non-fat dry milk.

8        16.     In some instances, on information and belief, Aurora packages the Milk Products in

9    cartons or other containers according to a retailer's instruction, and bearing the retailer's brand

10    name, from its facility in Colorado.

11        17.     Describing itself as a "steward" of producing Milk Products in a certain way, during

12    the relevant period, Aurora represented or implied that the cows that produce its Milk Products: (a)

13    lived outdoors all year-round; (b) ate only organic feed; (c) were never given antibiotics; and (d)

14    were given access to pasture.

15        18.     For example, Aurora stated and continues to state on its website:

16          To us, a healthy cow is the following:

17
- A contented cow that lives outdoors all year-round, with 24-hour
18      access to water, and that is fed a nutritionally-balanced diet of
     organic pasture, organic mixed forages (such as alfalfa hay, grass hay
19      and silages), organic grain (such as soymeal, ground corn, wheat,
     sunflower and flax seeds) and an organic vitamin and mineral
20      supplement. Learn more about our Organic Feed.
21    
- A cow free of infections, diseases and parasites that is never given
22      antibiotics. If ever sick, the cow is treated in our "Early Sick Cow"
     program – rest, fluids, homeopathic and probiotic treatments, with a
23      focus on preventative healthcare and early recognition.
- Living as naturally as possible, a healthy cow gets pregnant on time,
24      doesn't have problems during its birth and doesn't have reproductive
25      constraints.

26                           ***

27         Relaxed cows:

28

COMPLAINT                  - 4 -

- Have good <u>nutrition</u> so that there is no stress from food and so that their milk production does not unduly tax their body systems.
- Have access to pasture so that grazed forage is a part of the diet.[3]

19.     Aurora further represented and continues to represent to consumers that pasturing is the main source of food for cows, with other sources as "supplements," stating that "[b]y optimizing sustainable resources in our arid climates, we are able to provide our cows both pasture to feed upon as well as organic feed to supplement their nutrition."[4]

20.     Aurora also depicted and continues to depict its cows foraging in open, grassy fields:





*See generally* http://www.auroraorganic.com.

_____

[3] http://www.auroraorganic.com/aodweb/site/itemContent.aspx?iContentID=100&iCategoryID=8 (originally confirmed on July 17, 2008 and last visited November 16, 2010).

[4] http://www.auroraorganic.com/aodweb/site/itemContent.aspx?iContentID=98&iCategoryID=8 (originally confirmed on July 17, 2008 and last visited November 16, 2010).

010004-10 410178 V1

1    21.    Aurora's marketing extends to the point of purchase. In an article published by

2    Progressive Grocer in January 2008, Sonja Tuitele, a spokesperson for Aurora, was quoted as

3    saying:

4        'The best way to merchandise and market any milk in the dairy case is to explain the
         benefits of that product to your consumers through point-of-purchase materials and
5        side-panel information right on the milk carton.' . . . 'Consumers have a thirst for
         information about the products they purchase, where they come from, and who
6        produced that product. For organic milk specifically, consumers want to know that
         it came from cows that weren't given antibiotics or synthetic growth hormones, that
7        pesticides weren't used in the feed, and that the animals are treated humanely.'

8        In the case of private label, 'it's no different. The benefit of private label organic
         milk for consumers is a store brand will have superior quality and taste, but come at
9        a more affordable price because that product doesn't rely on marketing to build its
         brand. This encourages trial and helps to expand the overall market for organic milk
10       . . . We work with our retail customers to participate in their store-level demo
         programs, and when consumers taste the quality of their store-brand organic milk,
11       it's one of the best ways to convert conventional milk drinkers to organic.'

12   Bridget Goldschmidt, *Milk: Cow Cash,* Progressive Grocer, Jan. 2008.

13       22.    Aurora also claimed and continues to claim that "[t]he dairy maintains 100%

14   traceability of all animals, crops and such, with a complete audit and certification of 100% of the

15   system."[5]

16       23.    Aurora made and continues to make these representations because it knows they are

17   important to its customers. For example, part of humane animal husbandry practices includes

18   maintaining livestock living conditions and health care practices in a way that accommodates the

19   health and natural behavior of the animals, including access to pasture on which the animals can

20   graze freely and consume a substantial portion of their food.

21       24.    Likewise, pasturing cows is intended to ensure a production system that provides

22   living conditions that allow the animals to satisfy their natural behavior patterns and provides

23   preventative health care benefits. Pasturing contributes to preventive health care management by

24   enabling ruminants to develop and reproduce under conditions that reduce stress, strengthen

25   immunity, and deter illness. Pasturing affords ruminants the freedom of choice to satisfy natural

26

27   _____
     5
     http://www.auroraorganic.com/aodweb/site/itemContent.aspx?iContentID=122&iCategoryID=6
28   (last visited July 17, 2008).

COMPLAINT                                          - 6 -

1   behavior patterns.  Pasturing assures a relationship between the animal and land that satisfies

2   organic principles.

3       25.     Similarly, free grazing produces a higher quality and more nutritious milk than cows

4   that are confined to feed lots, even if the cows in the lots are fed organic grains.  Milk from

5   pastured cows can contain up to five times more conjugated lineolic acid, an anti-oxidant shown to

6   reduce cancer risks, as well as higher levels of beta-carotene, vitamin A, vitamin E, and omega-3

7   fatty acid than does milk from grain-fed cows.

8       26.     Aurora thus marketed the health benefits of drinking milk from pastured cows,

9   which has been one of the major contributing factors to the increasing demand for organic milk and

10  the Milk Products at issue here.

11      27.     However, contrary to its representations and warranties, during the relevant period,

12  Aurora purposefully did not, among other things:

13          a.      establish appropriate housing, pasture conditions, and sanitation practices for

14  its dairy cows to minimize the occurrence and spread of diseases and parasites;

15          b.      establish and maintain living conditions for its dairy cows which

16  accommodated their health and natural behavior;

17          c.      provide its dairy cows with suitable access to the outdoors, shade, shelter,

18  exercise areas, fresh air, and direct sunlight or provide its dairy cows with proper access to

19  pasture;

20          d.      provide its dairy cows (which typically consume their own bedding) with

21  appropriate clean, dry organic bedding;

22          e.      provide its dairy cows with a total feed ration composed of agricultural

23  products, including pasture and forage, that were organically produced and handled; and

24          f.      keep conventional dairy cows separate from the cows that produced its Milk

25  Products, and thus dairy cows that had been subject to antibiotic treatment and/or ate non-

26  organic feed provided milk from which the Milk Products were made;

27          g.      maintain adequate records that disclosed all activities and transactions in

28  sufficient detail to be readily understood and audited.

COMPLAINT                                            - 7 -

1    28.    Plaintiffs did not and could not have learned of Aurora's misrepresentations and

2    deceptive conduct until on or about March 7, 2007 when the USDA disclosed that Aurora had

3    failed to comply, in numerous respects, with federal law regarding production of Milk Products

4    labeled as organic.

5    29.    The USDA found the frequency and willfulness of Aurora's violations to be so

6    significant that on or about April 16, 2007 it issued a "Notice of Proposed Revocation" to Aurora,

7    stating: "Due to the nature and extent of these violations, the NOP [National Organic Program]

8    proposes to revoke Aurora Organic Dairy's production and handling certifications under the NOP."

9    That revocation would have barred Aurora from selling its Milk Products, as then labeled, for five

10   years into the future.

11   30.    The USDA's disclosure of the facts underlying its Notice of Proposed Revocation

12   revealed that Aurora's production practices, from at least 2003 to August 23, 2007, were not in

13   conformance with Aurora's representations and warranties.

14   31.    Indeed, during the relevant period, Aurora applied business practices of

15   conventional, large-scale, dairies contrary to its representations and warranties.

16   32.    In fact, Aurora's practice was to deny its cows access to pasture while they were

17   lactating and to keep them in feedlots.

18   33.    At all relevant times, Aurora milked its dairy cows three times per day, in order to

19   maximize milk production per cow, even though most organic milk dairy farms only milk their

20   cows up to twice per day. As a result, Aurora's milk output per cow was substantially greater than

21   the per cow milk output of other organic dairies.

22   34.    At a peak of over 4,000 cows Aurora kept on its Platteville farm, it was a practical

23   impossibility to both provide the cows with access to pasture in any meaningful sense, and to milk

24   them three times each day.

25   35.    Aurora marketed and sold its Milk Products in a manner designed to mislead

26   purchasers – including Plaintiffs and the members of the putative Classes – by misrepresenting the

27   manner in which it produced the Milk Products.

28

COMPLAINT                                    - 8 -

010004-10 410178 V1

1    36.    Aurora misrepresented and omitted material facts regarding the way in which its

2  Milk Products were produced because Aurora knew that consumers purchased the Milk Products in

3  order to prevent their own and their families' exposure to antibiotics and pesticides, both of which

4  could lead to bodily injury. Despite its representations, on information and belief, Aurora's actual

5  practices exposed consumers to antibiotics and pesticides. One or more Plaintiffs complain of

6  bodily injury or the potential for bodily injury as the result of Aurora's wrongdoing.

7    37.    Because of its misrepresentations and omissions of material fact, Aurora was able to

8  sell its Milk Products at prices substantially higher than conventional milk and milk products for its

9  own substantial benefit and to the detriment of purchasers, including Plaintiffs and the members of

10  the Classes.

11    38.    The premium Aurora gained from the sale of its Milk Products is significant,

12  totaling millions of dollars per year. Plaintiffs would not have purchased Aurora's Milk Products

13  had they known the truth. Through Aurora's deception, Plaintiffs and the other members of the

14  Classes did not receive the benefit of the bargain.

15    39.    Among other things, Aurora's conduct constitutes one or more deceptive and unfair

16  trade acts or practices, breached express and implied warranties, and caused injury to the many

17  thousands of purchasers of Milk Products produced by Aurora, including Plaintiffs and the

18  members of the Classes.

19    **A.    Private Label Organics**

20    40.    Aurora sold some of its Milk Products to consumers under its own "High Meadow"

21  brand, including through Publix. Aurora also sold Milk Products to other retailers, who then sold

22  these products under their own private-label brands to consumers. Such retailers include but may

23  not be limited to Costco, Safeway, Target, Wal-Mart, and Wild Oats. Aurora is the country's

24  largest private-label producer of Milk Products.

25

26

27

28

COMPLAINT                                                                      - 9 -

010004-10 410178 V1

### 1. Costco's "Kirkland" Brand

41.     Costco sold Milk Products under the brand name "Kirkland." The Kirkland label Milk Products were contained in cartons that specifically represented the manner in which the Milk Products were allegedly produced.

42.     Costco aggressively promoted its "Kirkland"-label Milk Products and the manner in which those Milk Products were produced. For example, an article in the *Costco Connection* newsletter of January 2006 was entitled "Costco's Dairy Queens." [6] It promoted the quality of Costco's Milk Products and the manner in which the Milk Products were produced:

> When I was asked by Costco to learn about organic products, one question I had was "What makes organic milk so special?" To answer this, I visited one of the farms that produced Costco's Kirkland Signature organic milk.
>
> The cows on the farm have quite the life. They feed on a balanced organic vegan diet and have access to organic pastures for grazing. They have their own veterinarian, nutritionists and even a physical-therapy pool.
>
> Sandy Custer, the Costco buyer who accompanied me on my visit, notes, "There are a lot of farmers who do a great job with their animals and farms. Organic farmers take it one step further. They take extra care of their animals to keep them healthy – which means greater quality and quantities of milk without the need for antibiotics and additional hormones. All processing and bottling is certified organic and done right on the farm."
>
> Costco organic milk, boxed as three half gallons, offers savings that range from 66 cents to $1.66 per half gallon.
>
> Good job, ladies. Great job, Costco.—*PV*

43.     The label itself depicted a bucolic scene with cows at pasture:

---

[6]     http://www.costcoconnection.com/connection/200601/?pg=107 (as of July 17, 2008 and last visited November 16, 2010).

COMPLAINT                                     - 10 -

44. The label also represented the manner in which the Milk Products were produced:



45. The "Kirkland" label thus represented, warranted, and deceptively indicated, *inter alia*, that:

    a.   the dairy cows that produced the Milk Products had not been given antibiotics;

b. the dairy cows that produced the Milk Products had not been given synthetic growth hormones;

c. the diet of the dairy cows that produced the Milk Products did not include pesticides (which implied that the feed is organic);

d. the diet of the dairy cows that produced the Milk Products included organic pasture; and

e. the dairy cows have true access to pasture.

46. These representations were materially false, deceptive and misleading. They also contained material omissions regarding the true manner in which "Kirkland" Milk Products were produced.

47. Costco's representations were intended to, and did or had the potential to, deceive Plaintiffs and the other members of the Classes.

48. The conduct described above caused injury to Plaintiffs and the other members of the Classes who purchased "Kirkland" Milk Products. Plaintiffs would not have purchased "Kirkland" Milk Products had they known the truth. Further, as a result of the misrepresentations made by Costco and the "Kirkland" label, Plaintiffs and the other members of the Classes did not receive the benefit of the bargain and are entitled to damages.

**2. Safeway's "O Organics" Brand**

49. Safeway sold Milks Products under the brand name "O Organics." The "O Organics"-label Milk Products were contained in cartons that specifically represented the manner in which the Milk Products were allegedly produced.

50. Safeway's "O Organics" label depicted a bucolic scene with cows grazing in a green pasture:

COMPLAINT                                                           - 12 -

51.  Safeway also stated on the carton of its "O Organics" milk:

ORGANICS

*Organic from the Source*

There's a lot that goes into a good glass of milk. It starts with the land. Our dairy pastures are environmentally friendly, maintained with the use of recognized organic horticultural practices. The dairy cows that produce *O* Organics Milk enjoy a healthy mix of fresh air, plenty of exercise, clean drinking water and a wholesome, 100% certified organic diet – and they are not given growth hormones or treated with antibiotics.

All of these practices support sustainable farming, which is good for the environment, good for the cows and good for the milk. That's why our *O* Organics Milk tastes like milk should – fresh and pure.

52.  The "O Organics" label thus represented, warranted and deceptively indicated, *inter alia*, that:

a.  the dairy cows that produced the Milk Products had not been given antibiotics;

b.  the dairy cows that produced the Milk Products had not been given synthetic growth hormones;

c.  the diet of the dairy cows was 100% organic;

1                 d.   the diet of the dairy cows that produced the Milk Products included organic

2                    pasture; and

3                 e.   the dairy cows had true access to pasture.

4       53.   These representations were materially false, deceptive and misleading. They also

5  contained material omissions and failures to disclose regarding the true manner in which "O

6  Organics" Milk Products were produced.

7       54.   Safeway's representations were intended to, and did or had the potential to, deceive

8  Plaintiffs and the other members of the Classes.

9       55.   The conduct described above caused injury to Plaintiffs and the other members of

10  the Classes who purchased "O Organics" Milk Products. Plaintiffs would not have purchased "O

11  Organics" Milk Products had they known the truth. Further, as a result of the misrepresentations

12  made by Safeway and the "O Organics" label, Plaintiffs and the other members of the Classes did

13  not receive the benefit of the bargain and are entitled to damages.

14             **3.**      **Wild Oats' Store Brand**

15

16       56.   Wild Oats sold Milk Products under the Wild Oats Organic label.

17       57.   Wild Oats represented and warranted that "Foods with the Wild Oats Organic label

are made with 95-100% certified organic ingredients from products grown by farmers who practice

18

19  sustainable agriculture. No synthetic pesticides, herbicides, fertilizers or GMOs are used in organic

farming."[7]

20

21       58.   In advertising its Wild Oats Organic line, Wild Oats contended that "[b]ehind every

label is a story," adding that "[l]ong before a Wild Oats product appears on the shelf, our buyers

22

23  travel around the corner and across the world searching for artisan, organic and natural products

that meet our standards for excellence, and yours for taste, quality and value."

24

25       59.   Wild Oats also claimed it was committed to ensuring that its products were held to

the highest organic standards in the industry:

26

27              **Standards**

28  [7] http://www.wildoatsproducts.com/app/private/index?pageId=100905&p=page (last visited July 17, 2008).

COMPLAINT                              - 14 -

The Wild Oats commitment to quality is unparalleled in the grocery business. Using rigorous criteria based on scientific research, we ensure our stores feature a wide selection of products that are made naturally - without artificial flavors, colorings, preservatives or other synthetic additives. We feature products that contribute to your health and well-being and we partner with vendors that meet our environmental and social standards.

The Wild Oats Standards Committee was created with the vision of enhancing the lives of our customers, our employees and the environment by maintaining the highest natural and organic standards in the industry. Our decisions are grounded on the most current, reliable scientific research relevant to the concerns of our customers.

60.     Wild Oats thus represented, warranted, and deceptively indicated, *inter alia*, that:

a. the dairy cows that produced the Milk Products had not been given antibiotics;

b. the dairy cows that produced the Milk Products had not been given synthetic

growth hormones;

c. the diet of the dairy cows was organic.

61.     These representations were materially false, deceptive and misleading. They also contained material omissions and failures to disclose regarding the true manner in which Wild Oats Organic label Milk Products were produced.

62.     Wild Oat's representations were intended to, and did or had the potential to, deceive Plaintiffs and the other members of the Classes.

63.     The conduct described above caused injury to Plaintiffs and the other members of the Classes who purchased Wild Oats Milk Products. Plaintiffs would not have purchased Wild Oats Milk Products had they known the truth. Further, as a result of the misrepresentations made by Wild Oats, Plaintiffs and the other members of the Classes did not receive the benefit of the bargain and are entitled to damages.

COMPLAINT                                                    - 15 -

010004-10 410178 V1

**B.    Injury to Plaintiffs and The Other Members of The Classes**

64.    Based on Defendants' representations, warranties, deceptive statements and material omissions regarding the manner in which the Milk Products were produced, Plaintiffs and the putative Classes were willing to pay – and did pay – premium prices for the Milk Products.

65.    As of May 2005, the national average price for a half gallon of organic milk was $4.01, as compared to $2.02 for conventional milk. Based on this average, organic milk commanded a price premium of *98 percent* in the national retail market:

### Price Premium of Organic Milk



Carolyn Dmitri & Kathryn M. Venezia, *Retail and Consumer Aspects of the Organic Milk Market* (USDA Econ. Research Serv., LDP-M-155-01, May 2005), *available at* http://www.ers.usda.gov/publications/LDP/2007/05May/LDPM15501/ldpm15501.pdf.

66.    Plaintiffs would not have purchased Defendants' Milk Products had they known the truth and are entitled to the maximum refund as allowed by state law. Further, as a result of the misrepresentations made by Defendants, Plaintiffs and the other members of the Classes did not receive the benefit of the bargain and are entitled to damages.

COMPLAINT

- 16 -

010004-10 410178 V1

## V.    CLASS ALLEGATIONS

67.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs seek certification of the following Classes (or alternative Classes),[8] for the time period December 5, 2003 through August 23, 2007 ("Class Period"), defined as follows:

### Aurora Classes

All persons in the United States who purchased milk or milk products derived from milk produced by Aurora Dairy (the "Aurora Class").

All persons in the Consumer Protection States[9] who purchased milk or milk products derived from milk produced by Aurora Dairy (the "Aurora Consumer Protection Class").

All persons in the Non-Privity Breach of Express Warranty States[10] who purchased milk or milk products derived from milk produced by Aurora Dairy (the "Aurora Breach of Express Warranty Class").

All persons in the Non-Privity Breach of Implied Warranty States[11] who purchased milk or milk products derived from milk produced by Aurora Dairy (the "Aurora Breach of Implied Warranty Class").

All persons in the Negligence Per Se States[12] who purchased milk or milk products derived from milk produced by Aurora Dairy (the "Aurora Negligence Per Se Class").

---

[8]    Plaintiffs reserve the right to amend all class definitions at class certification based on additional research and/or changes in state law.

[9]    The Consumer Protection States are defined hereinafter to include the states of Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Idaho, Illinois, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Virginia, Vermont, Washington, West Virginia, Wisconsin, and Wyoming.

[10]    The Non-Privity Breach of Express Warranty States are defined hereinafter to include the states of Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Hawaii, Indiana, Kansas, Louisiana, Maine, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, or Wyoming, which do not require privity.

[11]    The Non-Privity Breach of Implied Warranty States are defined hereinafter to include the states of Arkansas, Alaska, California, Colorado, Delaware, District of Columbia, Hawaii, Indiana, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Texas, Utah, Virginia, West Virginia, or Wyoming, which do not require privity.

COMPLAINT                                                    - 17 -

010004-10 410178 V1

All persons in the Unjust Enrichment States[13] who purchased milk or milk products derived from milk produced by Aurora Dairy (the "Aurora Unjust Enrichment Class").

### The Costco Classes

All persons in the United States who purchased milk or milk products derived from milk produced by Aurora Dairy and retailed by Costco under the "Kirkland" brand (the "Costco Purchaser Class").

All persons in the Consumer Protection States who purchased Kirkland-brand milk or milk products ("Costco Consumer Protection Class").

All persons in the Unjust Enrichment States who purchased Kirkland-brand milk or milk products (the "Costco Unjust Enrichment Class").

### The Safeway Classes

All persons in the United States who purchased milk or milk products derived from milk produced by Aurora Dairy and retailed by Safeway under the "O Organics" brand (the "Safeway Purchaser Class").

All persons in the Consumer Protection States who purchased O Organics-brand milk or milk products ("Safeway Consumer Protection Class").

All persons in the Unjust Enrichment States who purchased O Organics-brand milk or milk products (the "Safeway Unjust Enrichment Class").

### The Wild Oats Classes

All persons in the United States who purchased milk or milk products derived from milk produced and sold by Aurora Dairy and retailed by Wild Oats under the "Wild Oats" brand (the "Wild Oats Purchaser Class").

All persons in the Consumer Protection States who purchased Wild Oats-brand milk or milk products ("Wild Oats Consumer Protection Class").

All persons in the Unjust Enrichment States who purchased Wild Oats-brand milk or milk products (the "Wild Oats Unjust Enrichment Class").

68.    In defining these Classes, the persons purchasing the Milk Products include those who purchased for personal, household, or family use and consumption, but not for commercial resale.

---

[12]  The Negligence Per Se States are defined hereinafter to include the United States, except for the states of Arkansas, Florida, Kansas, Texas, and Wisconsin.

[13]  The Unjust Enrichment States are defined hereinafter to include the United States, except for the states of California and Texas.

COMPLAINT                                               - 18 -

010004-10 410178 V1

69. Plaintiffs are informed and believe that the Classes consist of many thousands of persons throughout the United States, making individual joinder of all class members impracticable.

70. Questions of law and fact are common to the Classes and predominate over questions affecting only individual members, including, among others, the following:

    a. Whether the alleged conduct by Defendants violated state law as alleged in this Complaint;

    b. Whether Defendants engaged in unfair, deceptive, or unlawful acts or practices;

    c. Whether Defendants made misrepresentations about the Milk Products and the manner in which they were produced;

    d. Whether Defendants omitted to state material facts about the Milk Products and the manner in which they were produced;

    e. Whether Defendants made and breached express and/or implied warranties to Plaintiffs and the other members of the Classes about the Milk Products;

    f. Whether Defendants obtained a benefit to the detriment of Plaintiffs and the other members of the Classes;

    g. Whether Defendants were unjustly enriched by their deceptive practices;

    h. Whether Defendants' acts and/or omissions caused injury to Plaintiffs and the other members of the Classes; and

    i. Whether Plaintiffs and the other members of the Classes are entitled to damages.

71. Plaintiffs' claims are typical of the claims of class members as described above; the claims arose from the same course of conduct by Defendants and the relief sought is common to Plaintiffs and the other members of the Classes.

72. Plaintiffs will fairly and adequately represent and protect the interests of all class members. Plaintiffs are represented by counsel competent and experienced in both consumer protection and class action litigation.

73. Class certification is proper under Fed. R. Civ. P. 23(b)(3), because common issues of law or fact predominate over any questions affecting only individual class and subclass

COMPLAINT                      - 19 -

1    members, and a class action is superior to other available methods for the fair and efficient

2    adjudication of this controversy.

3    74.    Furthermore, because the economic damages suffered by the individual class and

4    subclass members may be relatively modest compared to the expense and burden of individual

5
6    litigation, it would be impracticable for class and subclass members to seek redress individually for

7    the wrongful conduct alleged herein.

8                              **VI.    CAUSES OF ACTION**

9    **A.    Counts Against Aurora**

10                    **COUNT 1: Violation of the Colorado Consumer Protection Act,**
                              **Colo. Rev. Stat. §6-1-101 *et seq.***
11                    **(Brought on behalf of the Aurora Class against Aurora)**

12    75.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set

13    forth herein. Plaintiffs bring this claim on behalf of themselves and all other persons who

14
15    purchased Milk Products nationwide, asserting claims under the Colorado Consumer Protection

16    Act, Colo. Rev. Stat. § 6-1-101, *et seq.*

17    76.    Pursuant to the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-113(1),

18    Plaintiffs are: (a) actual or potential consumers of Aurora's goods and were injured as a result of

19    the deceptive trade practices described herein; (b) successors in interest to an actual consumer who

20    purchased Aurora's goods; or (c) were injured by the deceptive trade practices described herein in

21    the course of Aurora's business.

22
23    77.    The Milk Products are goods or products to which the Colorado Consumer

24    Protection Act applies.

25    78.    Aurora is a "person" as defined by the Colorado Consumer Protection Act, Colo.

26    Rev. Stat. § 6-1-102(6).

27
28

79.    Aurora in the course of its business engaged in one or more acts constituting

"deceptive trade practice[s]" pursuant to the Colorado Consumer Protection Act, Colo. Rev. Stat. §

6-1-105(1), including:

a.    Colo. Rev. Stat. § 6-1-105(1)(e): "Knowingly mak[ing] a false

representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities

of goods, food, services, or property or a false representation as to the sponsorship,

approval, status,, affiliation, or connection of a person therewith;"

b.    Colo. Rev. Stat. § 6-1-105(1)(g): "Represent[ing] that goods, food, services,

or property are of a particular standard, quality, or grade, or that goods are of a particular

style or model, if he knows or should know that they are of another;"

c.    Colo. Rev. Stat. §6-1-105(1)(i): Advertises goods, services or property with

the intent not to sell them as advertised.

d.    Colo. Rev. Stat. § 6-1-105(1)(u): "Fail[ing] to disclose material information

concerning goods, services, or property which information was known at the time of an

advertisement or sale if such failure to disclosure such information was intended to induce

the consumer to enter into a transaction."

80.    Aurora's deceptive trade practices include, among other things:

a.    its misrepresentations that it had established appropriate housing, pasture

conditions, and sanitation practices for its dairy cows to minimize the occurrence and

spread of diseases and parasites, when it had not;

b.    its misrepresentations that it had established and maintained living

conditions for its dairy cows which accommodated their health and natural behavior, when

it had not;

COMPLAINT                                        - 21 -

010004-10 410178 V1

82.     Aurora's misrepresentations and omissions were for the purpose of, and did, induce Plaintiffs and the other members of the Class to act or refrain from acting, or had the capacity to attract customers.

83.     Aurora's above described deceptive trade practices significantly impacted the public, including Plaintiffs and the other members of the Class, as actual or potential consumers of Aurora's Milk Products.

84.     Because Aurora is headquartered in Colorado and a substantial amount of the conduct giving rise to this action occurred in Colorado, the Colorado Consumer Protection Act should apply nationwide to this claim against Aurora.

85.     As a direct and proximate result of Aurora's use or employment of deceptive trade practices, Plaintiffs and the other members of the Class have suffered damages.

86.     Pursuant to the Colorado Consumer Protection Act, § 6-1-113(2), Plaintiffs and the other members of the Class are entitled to the relief set forth below, as appropriate, including, but not limited to compensatory damages, punitive damages, attorneys' fees, and the costs of this action.

87.     As set forth in Colorado Consumer Protection Act §§ 6-1-113(2)(a)(III) and 6-1-113(2)(b)(2.3), Aurora has acted fraudulently, willfully, knowingly, or intentionally with respect to its injury-causing conduct, such that an award of punitive damages is appropriate.

## COUNT 2: Violation of State Consumer Protection Laws
### (Brought on behalf of the Aurora Consumer Protection Class)

88.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein. In addition to and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products and on behalf of: (a) all other persons who purchased Milk Products in the same state as

COMPLAINT                                                                -23-

010004-10 410178 V1

Plaintiff purchased such products; and (b) all other persons who purchased Milk Products in states having similar consumer protection laws.

89.     Each of these Plaintiffs is a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he or she purchased the Milk Products.

90.     The consumer protection laws of the state in which each Plaintiff purchased the Milk Products declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

91.     Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions. These statutes are found at:

> a.      Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522, *et seq.*;
>
> b.      Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;
>
> c.      California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;
>
> d.      Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;
>
> e.      Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;
>
> f.      Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;
>
> g.      District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;
>
> h.      Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

i. Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480

1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised

Statutes §481A-1, *et seq.*;

j. Idaho Consumer Protection Act, Idaho Code, § 48-601, *et seq.*;

k. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS

§ 505/1, *et seq.*;

l. Indiana Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5.1, *et*

*seq.*;

m. Kansas Consumer Protection Act, Kan. Stat. Ann. § 50 626, *et seq.*;

n. Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and

Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et*

*seq.*;

o. Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et*

*seq.*;

p. Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch.

93A, *et seq.*;

q. Michigan Consumer Protection Act, § 445.901, *et seq.*;

r. Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et*

*seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §

325D.43, *et seq.*;

s. Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

t. Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*;

and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-

301, *et seq.*;

1      u.     Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903,

2      *et seq.*;

3      v.     New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et*

4      *seq.*;

5

6      w.    New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

7      x.    New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

8      y.    New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349,

9      *et seq.*;

10     z.     North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §

11    75-1.1, *et seq.*;

12

13    aa.   North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;

14    bb.   Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*;

15    cc.   Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

16    dd.   Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

17    ee.   Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.

18    Stat. § 201-1, *et seq.*;

19    ff.    Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I.

20    Gen. Laws § 6-13.1-1, *et seq.*;

21

22    gg.   South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et*

23    *seq.*;

24    hh.   South Dakota's Deceptive Trade Practices and Consumer Protection Law,

25    S.D. Codified Laws §§ 37 24 1, *et seq.*;

26    ii.    Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. &

27    Com. Code § 17.41, *et seq.*;

28

COMPLAINT

- 26 -

jj.  Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-196, *et seq.*;

kk.  Vermont Consumer Fraud Act, 9 Vt. Stat. Ann. § 2451, *et seq.*;

ll.  Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

mm.  West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

nn.  Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

oo.  Wyoming Consumer Protection Act, Wyo. Stat. § 40-12-101, *et seq.*

92.  The Milk Products constitute products to which these consumer protection laws apply.

93.  In the conduct of trade or commerce regarding its production, marketing and sale of Milk Products, Aurora engaged in one or more unfair or deceptive acts or practices, including, but not limited to:

a.  its misrepresentations that it had established appropriate housing, pasture conditions, and sanitation practices for its dairy cows to minimize the occurrence and spread of diseases and parasites, when it had not;

b.  its misrepresentations that it had established and maintained living conditions for its dairy cows which accommodated their health and natural behavior, when it had not;

c.  its misrepresentations that it had provided its dairy cows with suitable access to the outdoors, shade, shelter, exercise areas, fresh air, and direct sunlight or provided its dairy cows with proper access to pasture, which it had not;

d.  its misrepresentations that it had provided its dairy cows (which typically consume their own bedding) with appropriate clean, dry organic bedding, when it had not;

COMPLAINT                                                                 - 27 -

010004-10 410178 V1

e.    its misrepresentations that it had provided its dairy cows with a total feed ration composed of agricultural products, including pasture and forage, that are organically produced and handled, when it had not;

f.    its misrepresentations that it had kept conventional dairy cows separate from the cows that produced its Milk Products, and thus dairy cows that had been subject to antibiotic treatment and/or ate non-organic feed provided milk from which the Milk Products were made, when it had not; and

g.    its misrepresentations that it had maintained adequate records that disclosed all activities and transactions in sufficient detail to be readily understood and audited, when it had not;

h.    its misrepresentations regarding the manner in which its dairy cows were raised and fed; and

i.    its suppression or omission of material facts regarding the production of its Milk Products, specifically that the dairy cows were not raised at pasture, that its Milk Products are industrially produced, and that the production of its Milk Products failed to comply with its other representations.

94.    Aurora's labeling, statements, advertisements, representations and omissions were deceptive and likely to deceive.

95.    Aurora knew or should have known that its statements, advertisements, representations and omissions were untrue or misleading.

96.    Aurora used or employed such deceptive and unlawful acts or practices with the intent that these Plaintiffs and other members of the Class rely thereon or otherwise be deceived.

97.    Plaintiffs and the other members of the Class did rely on such misrepresentations or were deceived.

COMPLAINT                                    - 28 -

010004-10 410178 V1

98.     Plaintiffs would not have purchased the Milk Products at the prices they paid had they known the truth and are entitled to a full or partial refund as allowed by state law. Further, as a result of the misrepresentations made by Defendant, Plaintiffs did not receive the benefit of the bargain. As a result of Aurora's conduct, Plaintiffs and the members of the Class were damaged.

99.     Aurora's conduct showed complete indifference to or conscious disregard for the rights of others such that an award of punitive damages is appropriate.

## COUNT 3: Breach of Express Warranty
### (Brought on behalf of the Aurora Breach of Express Warranty Class against Aurora)

100.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein. In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products and on behalf of: (a) all other persons who purchased Milk Products in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding express warranty.

101.    Aurora's representations made to Plaintiffs and the members of the Class at the point of purchase are part of the description of the goods, and the bargain upon which they are offered for sale and purchased by Plaintiffs and the members of the Class.

102.    In addition or in the alternative, Aurora's representations were made by Aurora to induce Plaintiffs and the members of the Class to rely on such representation, and Plaintiffs and the members of the Class did so rely (and should be presumed to have relied) on said representation as a material factor in his/her decision to purchase the Milk Products rather than conventional milk products.

103.    At all times relevant to this action, Aurora falsely represented the products and the manner in which the products were produced, in breach of these express warranties in violation of state express warranty laws, including:

COMPLAINT                                      - 29 -

010004-10 410178 V1

a.     Ak. St. § 42.02.313;

b.     Ariz. Rev. Stat. Ann. § 47-2313;

c.     Ark. Code Ann. § 4-2-313;

d.     Cal. Comm. Code § 2313;

e.     Colo. Rev. St. § 4-2-313;

f.     Conn. Gen. Stat. Ann. § 42a-2-313;

g.     D.C. Stat. § 28:2-313;

h.     Haw. Rev. Stat. § 490:2-313;

i.     Ind. Code § 26-1-2-313;

j.     Kansas Stat. Ann. § 84-2-313;

k.     La. Civ. Code. Ann. Art. 2520;

l.     11 Maine Rev. Stat. Ann. § 2-313;

m.     Mass. Gen. Laws Ann. 106 § 2-313;

n.     Minn. Stat. Ann. § 336.2-313;

o.     Miss. Code Ann. § 75-2-313;

p.     Missouri Rev. Stat. § 400.2-313;

q.     Mont. Code Ann. § 30-2-313;

r.     Neb. Rev. Stat. § 2-313;

s.     Nev. Rev. Stat. §104.2313;

t.     N.H. Rev. Stat. § 382-A:2-313;

u.     N.J. Stat. Ann. § 12A:2-313;

v.     N.M. Stat. Ann. § 55-2-313;

w.     N.Y. U.C.C. Law § 2-313;

x.     N.C. Gen. Stat. Ann. § 25-2-313;

COMPLAINT

- 30 -

y.      Okla. Stat. Ann. Tit. 12A, § 2-313;

z.      Or. Rev. Stat. § 72.3130;

aa.     Pa. Stat. Ann. Tit. 13, § 2313;

bb.     R.I. Stat. § 6A-2-313;

cc.     S.C. § 36-2-313;

dd.     S.D. Cod. Laws. § 57A-2-313;

ee.     Tenn. Code Ann. § 47-2-313;

ff.     Tex. Bus. & Com. Code Ann. § 2.313;

gg.     Ut. Code Ann. § 70A-2-313;

hh.     Vt. Stat. Ann. § 2-313;

ii.     Wa. Ann. § 62A.2-313;

jj.     W. Va. Code § 46-2-313; and

kk.     Wyo. Stat. § 34.1-2-313.

104.    The above statutes do not require privity of contract to recover for breach of express warranty.

105.    As a result of Aurora's conduct, Plaintiffs and the members of the Class have been damaged.

106.    Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Aurora on notice thereof.

## COUNT 4: Breach of Implied Warranty of Merchantability
### (Brought on behalf of the Aurora Breach of Implied Warranty Class against Aurora)

107.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein. In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products and on behalf of: (a) all other persons who purchased Milk Products in the same state as

COMPLAINT                                                    - 31 -

1  Plaintiff purchased such products; and (b) all other persons who purchased such products in states
2  having similar laws regarding implied warranty.

3      108.    Plaintiffs and the members of the Class purchased Milk Products for the ordinary
4  purposes of Milk Products.

5
6      109.    By representing that the Milk Products were produced in a particular way, Aurora
7  impliedly warranted that such products were of merchantable quality, such that the Milk Products
8  were of the same average grade, quality, and value as similar goods sold under similar
9  circumstances.

10     110.    At all times material to this action, the Milk Products were not of merchantable
11 quality.

12     111.    Aurora's conduct breached its implied warranties regarding the Milk Products under
13
14 state implied warranty laws including:

15         a.     Ark. Stat. § 7-2-314 and § 7-2-315;

16         b.     Ak. St. § 45.02.314 and § 45.02.315;

17         c.     Cal. Comm. Code § 2314;

18         d.     Co. Rev. Stat. § 4-2-314 and § 4-2-315;

19         e.     6 Del. C. § 2-314 and § 2-315;

20         f.     D.C. Stat. § 28:2-314 and § 28:2-315;
21
22         g.     Haw. Rev. Stat. § 490:2-314 and § 490:2-315;

23         h.     Ind. Code § 26-1-2-314 and § 26-1-2-315;

24         i.     Kan. Stat. Ann. § 50-639(b);

25         j.     La. Civ. Code Ann. Art. 2524;

26         k.     11 Maine Rev. Stat. Ann. § 2-314 and § 2-315;

27         l.     Md. Com. Law Code Ann. § 2-314 and § 2-315;
28

COMPLAINT                                            - 32 -

010004-10 410178 V1

m.  Mass. Gen. Laws Ann. 106 § 2-314 and § 2-315;

n.  Mich. Comp. Laws Ann. § 440.2314 and § 440.2315;

o.  Minn. Stat. Ann. § 336.2-314 and §336.2-315;

p.  Miss. Code Ann. § 75-2-314 and § 75-2-315;

q.  Mo. Rev. Stat. § 400.2-314 and § 400.2-315;

r.  Mont. Code Ann. § 30-2-314 and § 30-2-315;

s.  Neb. Rev. Stat. § 2-314 and § 2-315;

t.  Nev. Rev. Stat. § 104.2314 and § 104.2315;

u.  N.H. Stat. Ann. § 382-A:2-314 and § 382-A:2-315;

v.  N.J. Stat. Ann. § 12A:2-314 and § 12A:2-315;

w.  N.M. Stat. Ann. § 55-2-314 and § 55-2-315;

x.  N.D. Stat. § 41-02-31 and § 41-02-32;

y.  Ohio Rev. Code Ann. § 1302.27 and § 1302.28;

z.  Okla. Stat. Ann. tit. 12A, § 2-314 and § 2-315;

aa.  O.R.S. § 72.8020;

bb.  Pa. Stat. Ann. tit. 13, § 2314 and §2315;

cc.  S.C. § 36-2-314 and § 36-2-315;

dd.  S.D. Cod. Laws. § 57A-2-314 and § 57A-2-315;

ee.  Tex. Bus. & Com. Code Ann. § 2.314 and § 2.315;

ff.  Ut. Code Ann. § 70A-2-314 and § 70A-2-315;

gg.  Va. Code Ann. § 8.2-314 and § 8.2-315;

hh.  W. Va. Code § 46-2-314 and § 46-2-315; and

ii.  Wyo. Stat. § 34.1-2-314 and § 34.1-2-315.

112. These states do not require privity of contract to recover for breach of implied warranty.

113. As a result, Plaintiffs and the members of the Class have been damaged.

114. Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Aurora on notice thereof.

## COUNT 5: Negligence Per Se
### (Brought on behalf of the Aurora Negligence Per Se Class against Aurora)

115. Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein. In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products and on behalf of: (a) all other persons who purchased Milk Products in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligence per se.

116. The Organic Foods Production Act of 1990 ("OFPA" or the "Act"), 7 U.S.C. § 6501, *et seq.*, and pertinent regulations enacted by the United States Department of Agriculture ("USDA"), contain certain requirements for Milk Products sold as "organic." Pursuant to the OFPA, the USDA issued regulations in March 2001 setting forth specific requirements that such foods, including dairy products, must meet. These regulations are contained at 7 CFR Part 205, and are implemented through the National Organic Program ("NOP").

117. The OFPA provides, in part, that "a person may sell or label an agricultural product as organically produced only if such product is produced and handled in accordance with [the OFPA]." 7 U.S.C. § 6505(a)(1)(A).

118. Among other requirements for Milk Products to qualify as "organic," dairy cows must be pastured in a manner complying with OFPA requirements. "Pasture" is defined as "[l]and

COMPLAINT                                      - 34 -

010004-10 410178 V1

—

used for livestock grazing that is managed to provide feed value and maintain and improve soil, water and vegetative sources." 7 C.F.R. § 205.2.

119. The "producer of an organic livestock operation must establish and maintain livestock living conditions which accommodate the health and natural behavior of animals including . . . [a]ccess to the outdoors . . . [and] [a]ccess to pasture for ruminants." 7 C.F.R. § 205.239. Dairy cows are ruminants.

120. Organic livestock producers also "must establish and maintain preventative livestock health care practices, including . . . [e]stablishment of appropriate housing, pasture conditions, and sanitation practices to minimize the occurrence and spread of diseases and parasites; [and] [p]rovision of conditions which allow for exercise, freedom of movement, and reduction of stress appropriate to the species." 7 C.F.R. § 205.238.

121. Such producers also "must provide livestock with a total feed ration composed of agricultural products, including pasture and forage." 7 C.F.R. § 205.237.

122. Section 6509(e)(2) of the OFPA provides, in part, that dairy animals from which Milk Products will be sold as organically produced shall be raised and handled in accordance with OFPA standards for not less than the twelve month period immediately prior to the sale of such Milk Products.

123. The OFPA, including 7 U.S.C. § 6509(e)(2), is intended to protect purchasers of organic Milk Products, including Plaintiff and members of the Class.

124. Aurora owed a duty to purchasers of its Milk Products – including Plaintiff and the Class –to produce, market and/or sell its Milk Products in accordance with OFPA, its accompanying regulations, and other applicable laws.

125. From at least December 2003 through August 23, 2007, Aurora did not comply with OFPA, its accompanying regulations and other applicable laws. From 2003 to at least August 23,

2007, Aurora sold "organic" milk using processes which failed to comply with those requirements, including but not limited to failure to establish pasture appropriate for minimizing the occurrence and spread of diseases and parasites, failure to establish access to pasture, and failure to maintain records documenting compliance with the USDA requirements for use of an "organic" label.

126. Based on this and its other conduct as alleged above, Aurora breached its duty to Plaintiffs and the members of the Class.

127. As a result of Aurora's conduct, Plaintiffs and members of the Class have suffered damages.

128. Aurora's conduct was outrageous, done with malice or bad motives, or done with reckless indifference to the interests of others such that an award of punitive damages is appropriate.

## COUNT 6: Negligent Misrepresentation
### (Brought on behalf of the Aurora Class against Aurora)

129. Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein. In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products and on behalf of: (a) all other persons who purchased Milk Products in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligent misrepresentation.

130. Aurora owed a duty to Plaintiffs and the members of the Class to exercise reasonable care in making representations about its Milk Products.

131. Aurora negligently and recklessly made such representations and omitted to disclose material facts to Plaintiffs and the Class through uniform mislabeling, non-disclosure and concealment through mass media and point-of-sale advertising, and through other information prepared or disseminated by Aurora.

COMPLAINT                                                    - 36 -

010004-10 410178 V1

132. Aurora's representations and omissions regarding its Milk Products were material.

133. Aurora's mislabeling, misrepresentations and non-disclosures were intended to influence consumers' purchasing decisions.

134. Plaintiffs and the members of the Class reasonably relied (or should be presumed to have relied) on the labeling and other representations Aurora made regarding its Milk Products.

135. Aurora knew or should have known that Plaintiffs and the members of the Class relied (or should be presumed to have relied) upon the labeling, representations and omissions of Aurora.

136. Aurora's representations and omissions regarding its Milk Products were false and misleading as alleged above.

137. As a result of these misrepresentations, omissions and concealment, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

138. As a result of Aurora's conduct, Plaintiffs and the members of the Class were damaged and are therefore entitled to compensatory damages, multiple damages, and equitable relief.

**COUNT 7: Unjust Enrichment**
**(Brought on behalf of the Aurora Unjust Enrichment Class against Aurora)**

139. Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein. In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products and on behalf of: (a) all other persons who purchased Milk Products in the same state as Plaintiff purchased such products and (b) all other persons who purchased such products in states having similar laws regarding unjust enrichment.

COMPLAINT                                                    - 37 -

010004-10 410178 V1

140. Aurora markets and promotes the manner in which it produces the Milk Products as a process having health, environmental and other benefits warranting a higher retail price than conventionally produced milk products.

141. Consumers pay a higher price for Milk Products.

142. Because consumers are willing to pay a higher retail price for Milk Products, Aurora is able to sell such products to retailers for a price higher than it would otherwise obtain.

143. Aurora received a benefit from Plaintiffs and the members of the Class in the form of the prices it charged to retailers for the Milk Products it produced.

144. Retailers then sell the Milk Products to Plaintiffs and the members of the Class for prices higher than conventionally produced products.

145. Under the circumstances, it would be inequitable for Aurora to retain the above-described benefit.

146. As a result of Aurora's unjust enrichment, Plaintiffs and the members of the Class were damaged in an amount to be determined at trial and seek full disgorgement and restitution of Aurora's unjust enrichment.

**B.     Counts Against Costco**

**COUNT 8: Violation Of The Washington Consumer Protection Act,**
**RCW 19.86 *et seq.***
**(Brought on behalf of the Costco Purchaser Class)**

147. Plaintiff Millikan incorporates by reference the preceding paragraphs as if they were fully set forth herein. In addition and/or in the alternative to the Count(s) above, Plaintiff assert this Count on her own behalf and on behalf of the Costco Purchaser Class.

148. The Washington Consumer Protection Act, Title 19, Chapter 86 of the Revised Code of Washington, prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

COMPLAINT                                              - 38 -

010004-10 410178 V1

149.   Plaintiff and the members of the Class are purchasers, consumers or otherwise within the class of persons that the Washington Consumer Protection Act was intended to protect.

150.   The Milk Products sold by Costco are goods or products to which the Washington Consumer Protection Act applies.

151.   Costco is a seller or other person to whom the Washington Consumer Protection Act applies.

152.   Costco engaged in unfair or deceptive acts or practices in the conduct of the trade or commerce of its Milk Products by misrepresenting that (or omitting material facts regarding), *inter alia*:

> f.   the dairy cows that produce the Milk Products have not been given antibiotics;
>
> g.   the dairy cows that produce the Milk Products have not been given synthetic growth hormones;
>
> h.   the diet of the dairy cows that produce the Milk Products does not include pesticides (which implies that the feed is organic);
>
> i.   the diet of the dairy cows that produce the Milk Products includes organic pasture; and
>
> j.   the dairy cows have true access to pasture.

153.   Such misrepresentations or omissions were material.

154.   Costco's misrepresentations and omissions were deceptive and had the capacity or tendency to deceive a substantial portion of the public.

155.   Costco's misrepresentations and omissions were made for the purpose of, and did, induce Plaintiff and the members of the Class who purchase Costco's Milk Products for an amount higher than conventional Milk Products.

COMPLAINT                                                                 - 39 -

010004-10 410178 V1

156. Plaintiff and the other members of the Class relied (or should be presumed to have relied) on Costco's misrepresentations and omissions, or were deceived.

157. Costco's conduct significantly impacted the public, including Plaintiff and the other members of the Class as actual or potential consumers of the Milk Products sold by Costco.

158. Because Costco is headquartered in Washington, Costco made decisions regarding the labeling, marketing and sale of the Milk Products in Washington, and other conduct giving rise to this action occurred in Washington, the Washington consumer protection laws should apply nationwide to this claim against Costco.

159. As a direct and proximate result of Costco's wrongful conduct, Plaintiff and the members of the Class have been damaged. Plaintiff would not have purchased the Milk Products at the prices she paid had she known the truth and is entitled to a full or partial refund as allowed by state law. Further, as a result of the misrepresentations made by Defendant, Plaintiff did not receive the benefit of the bargain. As a result of Defendant's conduct, Plaintiffs and the members of the Class were damaged

160. Plaintiff and the Class are entitled to compensatory damages, treble damages, attorneys' fees and cost of this suit.

161. Because Costco's conduct impacts the public interest, an award of treble damages is appropriate, pursuant to Wash. Rev. Code § 19.86.090.

**COUNT 9: Violation Of State Consumer Protection Laws**
**(Brought on behalf of the Costco Consumer Protection Class)**

162. Plaintiff Millikan incorporates by reference the preceding paragraphs as if they were fully set forth herein. In addition to and/or in the alternative to the Count(s) above, Plaintiff brings this Count on her own behalf under the law of the state in which she purchased Milk Products sold by Costco and on behalf of: (a) all other persons who purchased Milk Products sold by Costco in

COMPLAINT                                           -40-

010004-10 410178 V1

the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar consumer protection laws.

163. The consumer protection laws of the state in which Plaintiff and members of the Class purchased the Milk Products sold by Costco declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

164. Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions. These statutes are found at:

a. Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522, *et seq.*;

b. Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

c. California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

d. Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

e. Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

f. Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

g. District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;

h. Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

i. Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.*;

j.      Idaho Consumer Protection Act, Idaho Code, § 48-601, *et seq.*;

k.      Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;

l.      Indiana Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

m.      Kansas Consumer Protection Act, Kan. Stat. Ann. § 50 626, *et seq.*;

n.      Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;

o.      Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;

p.      Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch. 93A, *et seq.*;

q.      Michigan Consumer Protection Act, § 445.901, *et seq.*;

r.      Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

s.      Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

t.      Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*; and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

u.      Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;

v.      New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et*

*seq.*;

w.    New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

x.    New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

y.    New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*;

z.    North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*;

aa.    North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;

bb.    Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*;

cc.    Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

dd.    Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

ee.    Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq.*;

ff.    Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

gg.    South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

hh.    South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.*;

ii.    Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*;

jj.    Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-196, *et seq.*;

kk.    Vermont Consumer Fraud Act, 9 Vt. Stat. Ann. § 2451, *et seq.*;

ll.    Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

mm.    West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

nn.    Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

oo.    Wyoming Consumer Protection Act, Wyo. Stat. § 40-12-101, *et seq.*

165.    Plaintiff and each member of the Class is a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he or she purchased the Milk Products sold by Costco.

166.    Costco is a seller or other person to which these consumer protection laws apply.

167.    The Milk Products sold by Costco constitute products to which these consumer protection laws apply.

168.    Costco engaged in unfair or deceptive acts or practices in the conduct of the trade or commerce of its Milk Products by misrepresenting that (or omitting material facts regarding), *inter alia*:

a.    the dairy cows that produce the Milk Products have not been given antibiotics;

b.    the dairy cows that produce the Milk Products have not been given synthetic growth hormones;

c.    the diet of the dairy cows that produce the Milk Products does not include pesticides (which implies that the feed is organic);

d.    the diet of the dairy cows that produce the Milk Products includes organic pasture; and

e.    the dairy cows have true access to pasture.

COMPLAINT

- 44 -

010004-10 410178 V1

169. In the conduct of trade or commerce Costco's labeling, statements, advertisements, representations and omissions were deceptive and/or likely to deceive.

170. Costco knew or should have known that its statements, advertisements, representations and omissions were untrue or misleading.

171. Costco used or employed such deceptive and unlawful acts or practices with the intent that Plaintiff and other members of the Class rely thereon.

172. Plaintiff and the other members of the Class did rely (or should be presumed to have relied) on such misrepresentations, or were deceived.

173. As a result of Costco's conduct, Plaintiff and the members of the Class were damaged. Plaintiff would not have purchased the Milk Products at the prices she paid had she known the truth and is entitled to a full or partial refund as allowed by state law. Further, as a result of the misrepresentations made by Defendant, Plaintiff did not receive the benefit of the bargain. As a result of Defendant's conduct, Plaintiff and the members of the Class were damaged.

174. Costco's conduct showed complete indifference to or conscious disregard for the rights of others such that an award of punitive damages is appropriate.

## COUNT 10: Breach Of Express Warranty
### (Brought on behalf of the Costco Purchaser Class)

175. Plaintiff Millikan incorporates by reference the preceding paragraphs as if they were fully set forth herein. In addition and/or in the alternative to the Count(s) above, Plaintiff bring this Count on her own behalf under the law of the state in which she purchased Milk Products and sold at Costco and on behalf of: (a) all other persons who purchased Milk Products sold by Costco in the same state as Plaintiff purchased such product; and (b) all other persons who purchased such product in states having similar laws regarding express warranty.

COMPLAINT

- 45 -

010004-10 410178 V1

176. Costco's representations are made to Plaintiff and members of the Costco Purchaser Subclass at the point of purchase, are part of the description of the goods and the bargain upon which they are offered for sale and purchased by Plaintiff and the members of the Class.

177. In addition or in the alternative, Costco's representations are made to induce Plaintiff and the members of the Class to rely on such representation, and Plaintiff and the members of the Class did so rely (and should be presumed to rely) on said representation as a material factor in his/her decision to purchase the Kirkland Milk Product.

178. By its statements and representations, Costco expressly warranted that the Milk Products complied with the representations Costco made about the products and the manner in which they were produced.

179. The Milk Products sold by Costco did not, in fact, comply with the representations Costco made about the products and the manner in which they were produced.

180. At all times relevant to this action, Costco falsely represented the Milk Products and the manner in which the products were produced in breach of these express warranties.

181. As a result of Costco's conduct, Plaintiff and the members of the Class were damaged.

182. Within a reasonable time after they knew or should have known of such breach, Plaintiff, on behalf of herself and members of the Class, placed Costco on notice thereof.

### COUNT 11: Breach Of Implied Warranty of Merchantability
### (Brought on behalf of the Costco Purchaser Class)

183. Plaintiff Millikan incorporates by reference the preceding paragraphs as if they were fully set forth herein. In addition and/or in the alternative to the Count(s) above, Plaintiff brings this Count on her own behalf under the law of the state in which she purchased Milk Products sold by Costco on behalf of: (a) all other persons who purchased Milk Products sold by Costco in the

COMPLAINT                                                    - 46 -

010004-10 410178 V1

same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding implied warranty.

184. Plaintiff and the members of the Class purchased Milk Products sold by Costco for the ordinary purposes of Milk Products.

185. By representing that the Milk Products were produced in a particular way, Aurora impliedly warranted that such products were of merchantable quality, such that the Milk Products were of the same average grade, quality, and value as similar goods sold under similar circumstances.

186. At all times material to this action, the Milk Products were not of merchantable quality.

187. As a result, Plaintiff and the members of the Class were damaged.

188. Within a reasonable time after they knew or should have known of such breach, Plaintiff, on behalf of herself and members of the Class, placed Costco on notice thereof.

### COUNT 12 Negligent Misrepresentation
### (Brought on behalf of the Costco Purchaser Class)

189. Plaintiff Millikan incorporates by reference the preceding paragraphs as if they were fully set forth herein. In addition and/or in the alternative to the Counts above, Plaintiff brings this Count on her own behalf under the law of the state in which she purchased Milk Products sold by Costco on behalf of: (a) all other persons who purchased Milk Products sold by Costco in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligent misrepresentation.

190. Costco owed a duty to Plaintiff and the members of the Class to exercise reasonable care in making representations about its Milk Products.

191. Costco negligently and recklessly made such representations and omitted to disclose material facts to Plaintiff and the Class through uniform mislabeling, non-disclosure and

COMPLAINT                                      - 47 -

010004-10 410178 V1

1  concealment through mass media and point-of-sale advertising, and through other information

2  prepared or disseminated by Costco or at its direction.

3      192.  Costco's representations and omissions regarding its Milk Products were material.

4      193.  Costco's mislabeling, misrepresentations and non-disclosures were intended to

5  influence consumers' purchasing decisions.

6

7      194.  Plaintiff and the members of the Class reasonably relied (or should be presumed to

8  have relied) on the labeling and other representations Costco made regarding its Milk Products.

9      195.  Costco knew or should have known that Plaintiff and the members of the Class

10  relied (or should be presumed to have relied) upon the labeling, representations and omissions of

11  Costco.

12      196.  Costco's representations and omissions regarding its Milk Products were false and

13  misleading as alleged above.

14

15      197.  As a result of these misrepresentations, omissions and concealment, Plaintiff and the

16  members of the Class have been damaged in an amount to be proven at trial.

17      198.  As a result of Costco's conduct, Plaintiff and Class members were damaged and are

18  therefore entitled to compensatory damages, multiple damages, and equitable relief.

19
## COUNT 13 Unjust Enrichment
20  **(Brought on behalf of the Costco Unjust Enrichment Class)**

21      199.  Plaintiff Millikan incorporates by reference the preceding paragraphs as if they were

22  fully set forth herein. In addition and/or in the alternative to the Counts above, Plaintiff brings this

23  Count on her own behalf under the law of the state in which she purchased Milk Products sold by

24  Costco on behalf of: (a) all other persons who purchased Milk Products sold by Costco in the same

25  state as Plaintiff purchased such products; and (b) all other persons who purchased such products in

26  states having similar laws regarding unjust enrichment.

27

28

COMPLAINT                                        - 48 -

010004-10 410178 V1

200. Costco markets and promotes the production process for the Milk Products as a process having health, environmental and other benefits warranting a higher retail price than conventionally produced Milk Products.

201. Costco charges, and consumers pay, a higher retail price for the Milk Products sold by Costco than the price of conventionally produced Milk Products.

202. Costco received a benefit in the form of the price charged by Costco and paid by Plaintiff and the members of the Class for the Milk Products sold by Costco.

203. Under the circumstances, it would be inequitable for Costco to retain the above-described benefit.

204. As a result of Costco's unjust enrichment, Plaintiff and the members of the Class were damaged in an amount to be determined at trial and seek full disgorgement and restitution of Costco's unjust enrichment.

C.    **Counts Against Safeway**

**COUNT 14: Violation of the California Unfair Competition Law,
Business And Professions Code §§17200 et seq.
(Brought on behalf of the Safeway Purchaser Class)**

205. Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein. In addition and/or in the alternative to the Count(s) above, Plaintiffs assert this Count on their own behalf and on behalf of the Safeway Purchaser Class.

206. Safeway placed into the stream of commerce and intended for ultimate sale to consumers Milk Products labeled with misrepresentations, and such placement is and has been "unlawful," "unfair," and "fraudulent" in violation of Cal. Bus. & Prof. Code § 17200 *et seq.*, which prohibits unfair competition defined as any "unlawful, unfair or fraudulent business act or practice ("Unfair Competition Law" or "UCL").

COMPLAINT                                                     - 49 -

010004-10 410178 V1

1    207.    Additionally, California's False Advertising Law, California Business and

2    Professions Code §§ 17500, *et seq.* ("FAL") makes it unlawful, in connection with the sale of

3    goods or services, to make or disseminate "any statement, . . . which is untrue or misleading, and

4    which is known, or which by the exercise of reasonable care should be known, to be untrue or

5    misleading."

6

7    208.    Plaintiffs and the members of the Class are purchasers, consumers or otherwise

8    within the class of persons that the UCL was intended to protect.

9    209.    Safeway is a seller or other person to whom the UCL applies.

10    210.    Safeway, with the intent to dispose of its Milk Products, made statements in its

11    advertisements and labels concerning those Milk Products that were untrue or misleading and

12    which Safeway knew or in the exercise of reasonable care should have known were untrue or

13    misleading, including that:

14

15              f.    the dairy cows that produce the Milk Products have not been given antibiotics;

16              g.    the dairy cows that produce the Milk Products have not been given synthetic

17                    growth hormones;

18              h.    the diet of the dairy cows is 100% organic;

19              i.    the diet of the dairy cows that produce the Milk Products includes organic

20                    pasture; and

21

22              j.    the dairy cows have true access to pasture.

23    211.    Safeway, with the intent to dispose of its Milk Products, made Safeway's

24    advertisements concerning its Milk Products were deceptive and/or likely to deceive.

25    212.    Safeway's misrepresentations or omissions were material.

26    213.    Safeway used or employed the unlawful, unfair, and/or deceptive practices

27    described above with the intent that Plaintiffs and the members of the Class would rely thereupon.

28

COMPLAINT                                          - 50 -

214. Plaintiffs and the members of the Class did rely (or should be presumed to have relied) thereon, or were deceived.

215. As a result of Safeway's unlawful, unfair, deceptive, untrue, or misleading advertising and other conduct, Plaintiffs and the members of the Class have suffered injury in fact and have lost money or property.

216. Safeway's conduct violates the California Business and Professions Code, §§17200, *et seq.*

217. Because Safeway is headquartered in California, and because it made decisions and otherwise acted within the state of California regarding the advertisement, marketing and sale of its Milk Products, the California unfair competition laws should apply nationwide to this claim against Safeway.

218. Plaintiffs, on their own behalf and on behalf of the Class, request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair competition, as provided in Cal. Bus. & Prof. Code § 17203.

**COUNT 15: Violation of the California Consumer Legal Remedies Act, California Civil Code §§1750, *et seq.***
**(Brought on behalf of the Safeway Purchaser Class)**

219. Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein. In addition and/or in the alternative to the Count(s) above, Plaintiffs assert this Count on their own behalf and on behalf of the Safeway Purchaser Class.

220. The California Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA"), was enacted to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection. The CLRA is to be liberally construed and applied to promote those purposes.

COMPLAINT                                        - 51 -

010004-10 410178 V1

1    221.    Plaintiffs and the members of the Class are purchasers, consumers or other persons

2    to whom the CLRA is intended to apply.

3    222.    The Milk Products sold by Safeway are goods or products to which the CLRA

4    applies.

5

6    223.    Safeway is a seller or other person to whom the CLRA applies.

7    224.    Safeway engaged in unfair or deceptive acts or practices in transactions which

8    resulted in the sale of its Milk Products including, but not limited to, through its

9    misrepresentations that (or its omissions regarding), *inter alia*:

10           a.    the dairy cows that produce the Milk Products have not been given

11           antibiotics;

12           b.    the dairy cows that produce the Milk Products have not been given synthetic

13           growth hormones;

14

15           c.    the diet of the dairy cows is 100% organic;

16           d.    the diet of the dairy cows that produce the Milk Products includes organic

17           pasture; and

18           e.    the dairy cows have true access to pasture.

19

20    225.    Theses policies, acts, and practices violated and continue to violate the CLRA in at

21    least the following respects:

22

23           a.    In violation of §1770(5) of the CLRA, "[r]epresenting that goods or services

24    have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which

25    they do not have . . . ;"

26           b.    In violation of §1770(7) of the CLRA, "[r]epresenting that goods or services

27    are of a particular standard, quality, or grade, or that goods are of a particular style or

28

COMPLAINT                                              - 52 -

010004-10 410178 V1

1    model, if they are of another;" and

2        c.      In violation of §1770(9) of the CLRA, "[a]dvertising goods or services with

3    intent not to sell them as advertised."

4    329.    Safeway undertook the unfair or deceptive acts or practices with the intent that

5    Plaintiff and the other members of the Class would rely upon such acts or practices in purchasing

6

7    Safeway's Milk Products.

8    330.    In purchasing Safeway's Milk Products, Plaintiff and the other members of the

9    Class relied (or should be presumed to have relied) upon Safeway's representations, or were

10   deceived.

11   331.    Because Safeway is headquartered in California, and because it made decisions and

12   otherwise acted within the state of California regarding the advertisement, marketing and sale of its

13

14   Milk Products, the CLRA should apply nationwide to this claim against Safeway.

15   332.    As a result of Safeway's wrongful conduct, Plaintiffs and the members of the Class

16   sustained damages by paying a higher price for the Milk Products than comparable milk.

17   333.    Safeway's conduct was oppressive, fraudulent or malicious and intended to cause

18   harm to Plaintiff and the other members of the Class such that an award of punitive damages is

19   appropriate..

20

21   334.    Safeway was timely notified by consumers of its involvement in transactions

22   relating to the sale of Milk Products, as well as the classwide damage sustained by consumers as a

23   result of such involvement. Safeway has not corrected or otherwise rectified this situation prior to

24   the filing of this Complaint.

25   **COUNT 16: Violation of State Consumer Protection Laws**
     **(Brought on behalf of the Safeway Consumer Protection Class)**

26

27   335.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set

28   forth herein. In addition to and/or in the alternative to the Count(s) above, each of these Plaintiffs

COMPLAINT                                    - 53 -

brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Safeway on behalf of: (a) all other persons who purchased Milk Products sold by Safeway in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar consumer protection laws.

336. The consumer protection laws of the state in which each Plaintiff and member of the Safeway Purchaser Subclass purchased the Milk Products sold by Safeway declare that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

337. Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions. These statutes are found at:

a. Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522, *et seq.*;

b. Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

c. California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

d. Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

e. Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

f. Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

g. District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;

h. Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

i. Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480

1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised

Statutes §481A-1, *et seq.*;

j.      Idaho Consumer Protection Act, Idaho Code, § 48-601, *et seq.*;

k.      Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS

§ 505/1, *et seq.*;

l.      Indiana Deceptive Consumer Sales Act,  Ind. Code Ann. § 24-5-0.5.1, *et*

*seq.*;

m.      Kansas Consumer Protection Act, Kan. Stat. Ann. § 50 626, *et seq.*;

n.      Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and

Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et*

*seq.*;

o.      Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et*

*seq.*;

p.      Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch.

93A, *et seq.*;

q.      Michigan Consumer Protection Act, § 445.901, *et seq.*;

r.      Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et*

*seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §

325D.43, *et seq.*;

s.      Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

t.      Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*;

and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-

301, *et seq.*;

u.      Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903,

*et seq.*;

v.      New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;

w.      New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

x.      New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

y.      New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*;

z.      North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*;

aa.     North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;

bb.     Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*;

cc.     Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

dd.     Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

ee.     Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq.*;

ff.     Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

gg.     South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

hh.     South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.*;

ii.     Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*;

COMPLAINT                                   - 56 -

010004-10 410178 V1

jj.     Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-196, *et seq.*;

kk.     Vermont Consumer Fraud Act, 9 Vt. Stat. Ann. § 2451, *et seq.*;

ll.     Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

mm.     West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

nn.     Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

oo.     Wyoming Consumer Protection Act, Wyo. Stat. § 40-12-101, *et seq.*

338.    Each Plaintiff and member of the Class is a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he or she purchased the Milk Products sold by Safeway.

339.    Safeway is a seller or other person to whom the consumer protection laws apply.

340.    The Milk Products sold by Safeway constitute products to which these consumer protection laws apply.

341.    In the conduct of trade or commerce regarding its production, marketing and sale of Milk Products, Safeway engaged in one or more unfair or deceptive acts or practices, including but not limited to:

a.     the dairy cows that produce the Milk Products have not been given antibiotics;

b.     the dairy cows that produce the Milk Products have not been given synthetic growth hormones;

c.     the diet of the dairy cows is 100% organic;

d.     the diet of the dairy cows that produce the Milk Products includes organic pasture; and

COMPLAINT                                          - 57 -

010004-10 410178 V1

e.     the dairy cows have true access to pasture.

342.   Safeway's labeling, statements, advertisements, representations and omissions were deceptive and/or likely to deceive.

343.   Safeway knew or should have known that its statements, advertisements, representations and omissions were untrue or misleading.

344.   Safeway used or employed such deceptive and unlawful acts or practices with the intent that these Plaintiffs and other members of the Class rely thereon.

345.   Plaintiffs and the other members of the Class did rely on such misrepresentations, or were deceived.

346.   Each Plaintiff and member of the Class purchased Milk Products sold by Safeway that were falsely represented. As a result of Safeway's wrongful conduct, Plaintiffs and the members of the Class were damaged. Plaintiffs would not have purchased the Milk Products at the prices they paid had they known the truth and are entitled to a full or partial refund as allowed by state law. Further, as a result of the misrepresentations made by Defendant, Plaintiffs did not receive the benefit of the bargain. As a result of Defendant's conduct, Plaintiffs and the members of the Class were damaged.

347.   Safeway's conduct showed complete indifference to or conscious disregard for the rights of others such that an award of punitive damages is appropriate.

## COUNT 17: Breach of Express Warranty
### (Brought on behalf of the Safeway Purchaser Class)

348.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein. In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Safeway on behalf of: (a) all other persons who purchased Milk Products sold by

COMPLAINT                                  - 58 -

010004-10 410178 V1

Safeway in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding express warranty.

349.    Safeway's representations are made to Plaintiffs and members of the Safeway Purchaser Subclass at the point of purchase, are part of the description of the goods and the bargain upon which they are offered for sale and purchased by Plaintiffs and the members of the Class.

350.    In addition or in the alternative, Safeway's representations are made to induce Plaintiffs and the members of the Class to rely on such representation, and Plaintiffs and the members of the Class did so rely (and should be presumed to rely) on said representation as a material factor in his/her decision to purchase the O Organics Milk Product.

351.    By its statements and representations, Safeway expressly warranted that the Milk Products complied with the representations Safeway made about the products and the manner in which they were produced.

352.    The Milk Products sold by Safeway did not, in fact, comply with the representations Safeway made about the products and the manner in which they were produced.

353.    At all times relevant to this action, Safeway falsely represented the Milk Products and the manner in which the products were produced in breach of these express warranties.

354.    As a result of Safeway's conduct, Plaintiffs and the members of the Class were damaged.

355.    Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Safeway on notice thereof.

## COUNT 18:  Breach of Implied Warranty of Merchantability
### (Brought on behalf of the Safeway Purchaser Class)

356.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein. In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk

COMPLAINT                                                    - 59 -

Products sold by Safeway on behalf of: (a) all other persons who purchased Milk Products sold by

Safeway in the same state as Plaintiff purchased such products; and (b) all other persons who

purchased such products in states having similar laws regarding implied warranty.

357.   Plaintiffs and the members of the Class purchased Milk Products sold by Safeway

for the ordinary purposes of organic Milk Products.

358.   By representing that the Milk Products were produced in a particular way, Safeway

impliedly warranted that such products were of merchantable quality, such that the Milk Products

were of the same average grade, quality, and value as similar goods sold under similar

circumstances.

359.   At all times material to this action, the Milk Products were not of merchantable

quality.

360.   Safeway held itself out to, and did, possess expertise, skill and knowledge superior

to consumers including Plaintiffs and the members of the Class, who had a right to rely thereon.

361.   As a result, Plaintiffs and the members of the Class were damaged.

362.   Within a reasonable time after they knew or should have known of such breach,

Plaintiffs, on behalf of themselves and members of the Class, placed Safeway on notice thereof.

## COUNT 19: Negligent Misrepresentation
## (Brought on behalf of the Safeway Purchaser Class)

363.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set

forth herein. In addition and/or in the alternative to the Counts above, each of these Plaintiffs

brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk

Products sold by Safeway on behalf of: (a) all other persons who purchased Milk Products sold by

Safeway in the same state as Plaintiff purchased such products; and (b) all other persons who

purchased such products in states having similar laws regarding negligent misrepresentation.

COMPLAINT                              - 60 -

010004-10 410178 V1

364. Safeway owed a duty to Plaintiffs and the members of the Class to exercise reasonable care in making representations about its Milk Products.

365. Safeway negligently and recklessly made such representations and omitted to disclose material facts to Plaintiffs and the Class through uniform mislabeling, non-disclosure and concealment through mass media and point-of-sale advertising, and through other information prepared or disseminated by Safeway or at its direction.

366. Safeway's representations and omissions regarding its Milk Products were material.

367. Safeway's mislabeling, misrepresentations and non-disclosures were intended to influence consumers' purchasing decisions.

368. Plaintiffs and the members of the Class reasonably relied (or should be presumed to have relied) on the labeling and other representations Safeway made regarding its Milk Products.

369. Safeway knew or should have known that Plaintiffs and the members of the Class relied (or should be presumed to have relied) upon the labeling, representations and omissions of Safeway.

370. Safeway's representations and omissions regarding its Milk Products were false and misleading as alleged above.

371. As a result of these misrepresentations, omissions and concealment, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

372. As a result of Safeway's conduct, Plaintiffs and Class members were damaged and are therefore entitled to compensatory damages, multiple damages, and equitable relief.

**COUNT 20: Unjust Enrichment**
**(Brought on behalf of the Safeway Unjust Enrichment Class)**

373. Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein. In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Safeway on behalf of: (a) all other persons who purchased Milk Products sold by Safeway in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding unjust enrichment.

374. Safeway markets and promotes the production process for the Milk Products as having health, environmental and other benefits warranting a higher retail price than conventionally produced Milk Products.

375. Safeway charges, and consumers pay, a higher retail price for the Milk Products sold by Safeway than the price of conventionally produced Milk Products.

376. Safeway received a benefit in the form of the price charged by Safeway and paid by Plaintiffs and the members of the Class for the Milk Products sold by Safeway.

377. Under the circumstances, it would be inequitable for Safeway to retain the above-described benefit.

378. As a result of Safeway's unjust enrichment, Plaintiffs and the members of the Class were damaged in an amount to be determined at trial and seek full disgorgement and restitution of Safeway's unjust enrichment.

COMPLAINT                                             - 62 -

010004-10 410178 V1

1

## D. Counts Against Wild Oats

2

### COUNT 21 Violation of the Colorado Consumer Protection Act
### Colo. Rev. Stat. §6-1-101 *et seq.*
### (Brought on behalf of the Wild Oats Purchaser Class)

3

4

379. Plaintiff Benya incorporates by reference the preceding paragraphs as if they were

5

fully set forth herein. In addition and/or in the alternative to the Count(s) above, Plaintiff brings

6

7

this Count on behalf of herself and all other persons who purchased Milk Products sold by Wild

8

Oats under the Wild Oats brand nationwide under the Colorado Consumer Protection Act, Colo.

9

Rev. Stat. § 6-1-101, *et seq.*

10

380. Pursuant to the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-113(1),

11

Plaintiff is an actual consumer of Wild Oat's Milk Products and were injured as a result of the

12

deceptive trade practices described herein.

13

381. Wild Oats is a "person" as defined by the Colorado Consumer Protection Act, Colo.

14

15

Rev. Stat. § 6-1-102(6).

16

382. Wild Oats in the course of its business engaged in one or more acts constituting

17

"deceptive trade practice[s]" pursuant to the Colorado Consumer Protection Act, Colo. Rev. Stat. §

18

6-1-105(1), including:

19

a. Colo. Rev. Stat. § 6-1-105(1)(e): "Knowingly mak[ing] a false

20

representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities

21

of goods, food, services, or property or a false representation as to the sponsorship,

22

23

approval, status,, affiliation, or connection of a person therewith;"

24

b. Colo. Rev. Stat. § 6-1-105(1)(g): "Represent[ing] that goods, food, services,

25

or property are of a particular standard, quality, or grade, or that goods are of a particular

26

style or model, if he knows or should know that they are of another;"

27

28

COMPLAINT           - 63 -

1    c.    Colo. Rev. Stat. §6-1-105(1)(i): Advertises goods, services or property with

2    the intent not to sell them as advertised.

3    d.    Colo. Rev. Stat. § 6-1-105(1)(u): "Fail[ing] to disclose material information

4    concerning goods, services, or property which information was known at the time of an

5    advertisement or sale if such failure to disclosure such information was intended to induce

6

7    the consumer to enter into a transaction."

8    383.    Wild Oats' deceptive trade practices include, among other things, its

9    misrepresentations that (or omissions regarding), *inter alia*:

10        d.  the dairy cows that produce the Milk Products have not been given antibiotics;

11        e.  the dairy cows that produce the Milk Products have not been given synthetic

12            growth hormones; and

13

14        f.  the diet of the dairy cows is organic.

15    384.    Wild Oats' misrepresentations and omissions were for the purpose of, and did,

16    induce Plaintiff and the other members of the Class to act or refrain from acting, or had the

17    capacity to attract customers.

18    385.    Because Wild Oats was headquartered in Colorado, made decisions and engaged in

19    other acts in Colorado regarding the labeling, advertisement and sale of Wild Oats' Milk Products,

20    the Colorado Consumer Protection Act should apply nationwide to this claim against Wild Oats.

21

22    386.    Wild Oats' deceptive trade practices significantly impacted the public, including

23    Plaintiff and the other members of the Class, as actual or potential consumers of Wild Oats' goods

24    – namely its Milk Products.

25    387.    As a direct and proximate result of Wild Oats' use or employment of the deceptive

26    trade practices described above, Plaintiff and the other members of the Class were damaged.

27    Plaintiff would not have purchased the Milk Products at the prices she paid had she known the

28

COMPLAINT                                    - 64 -

010004-10 410178 V1

truth and is entitled to a full or partial refund as allowed by state law. Further, as a result of the misrepresentations made by Defendant, Plaintiff did not receive the benefit of the bargain. As a result of Defendant's conduct, Plaintiff and the members of the Class were damaged.

388.  Pursuant to the Colorado Consumer Protection Act, § 6-1-113(2), Plaintiff and the other members of the Class are entitled to the relief set forth below, as appropriate, including, but not limited to compensatory damages, punitive damages, attorneys' fees, and the costs of this action.

389.  As set forth in Colorado Consumer Protection Act §§ 6-1-113(2)(a)(III) and 6-1-113(2)(b)(2.3), Wild Oats has acted fraudulently, willfully, knowingly, or intentionally with respect to its injury causing conduct, such that an award of punitive damages is appropriate.

### COUNT 22: Violation of State Consumer Protection Laws
### (Brought on behalf of the Wild Oats Consumer Protection Class)

390.  Plaintiff Benya incorporates by reference the preceding paragraphs as if they were fully set forth herein. In addition to and/or in the alternative to the Count(s) above, Plaintiff brings this Count on her own behalf under the law of the state in which she purchased Milk Products sold by Wild Oats on behalf of: (a) all other persons who purchased Milk Products sold by Wild Oats in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar consumer protection laws.

391.  Plaintiff and members of the Class are consumers, purchasers or other persons entitled to the protection of the consumer protection laws of the state in which he or she purchased the Milk Products sold by Wild Oats.

392.  The consumer protection laws of the state in which Plaintiff and members of the Class purchased the Milk Products declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

COMPLAINT                                                    - 65 -

393.    Forty states and the District of Columbia have enacted statutes designed to protect

consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices

and false advertising and that allow consumers to bring private and/or class actions. These statutes

are found at:

a.      Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522, *et seq.*;

b.      Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

c.      California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*;

and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

d.      Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

e.      Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et*

*seq.*;

f.      Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

g.      District of Columbia Consumer Protection Procedures Act, D.C. Code §

28 3901, *et seq.*;

h.      Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §

501.201, *et seq.*;

i.      Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480

1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised

Statutes §481A-1, *et seq.*;

j.      Idaho Consumer Protection Act, Idaho Code, § 48-601, *et seq.*;

k.      Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS

§ 505/1, *et seq.*;

l.      Indiana Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5.1, *et*

*seq.*;

COMPLAINT                                              - 66 -

010004-10 410178 V1

1    m.    Kansas Consumer Protection Act, Kan. Stat. Ann. § 50 626, *et seq.*;

2    n.    Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and

3    Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et*

4    *seq.*;

5
     o.    Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et*
6
7    *seq.*;

8    p.    Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch.

9    93A, *et seq.*;

10   q.    Michigan Consumer Protection Act, § 445.901, *et seq.*;

11   r.    Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et*

12   *seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §
13
     325D.43, *et seq.*;
14
15   s.    Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

16   t.    Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*;

17   and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-

18   301, *et seq.*;

19   u.    Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903,
20
     *et seq.*;
21
22   v.    New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et*

23   *seq.*;

24   w.    New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

25   x.    New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

26   y.    New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349,
27
     *et seq.*;
28

COMPLAINT                                          - 67 -

z.    North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*;

aa.    North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;

bb.    Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*;

cc.    Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

dd.    Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

ee.    Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq.*;

ff.    Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

gg.    South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

hh.    South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.*;

ii.    Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*;

jj.    Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-196, *et seq.*;

kk.    Vermont Consumer Fraud Act, 9 Vt. Stat. Ann. § 2451, *et seq.*;

ll.    Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

mm.    West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

nn.    Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

oo.    Wyoming Consumer Protection Act, Wyo. Stat. § 40-12-101, *et seq.*

394. The Milk Products sold by Wild Oats constitute products to which these consumer protection laws apply.

395. Wild Oats' deceptive trade practices include, among other things, its misrepresentations that (or omissions regarding), *inter alia*:

    a. the dairy cows that produce the Milk Products have not been given antibiotics;

    b. the dairy cows that produce the Milk Products have not been given synthetic growth hormones; and

    c. the diet of the dairy cows is organic.

396. Wild Oats' labeling, statements, advertisements, representations and omissions were deceptive and/or likely to deceive.

397. Wild Oats knew or should have known that its statements, advertisements, representations and omissions were untrue or misleading.

398. Wild Oats used or employed such deceptive and unlawful acts or practices with the intent that these Plaintiff and the members of the Class rely thereon.

399. Plaintiff and the other members of the Class did so rely (and should be presumed to rely), or were deceived.

400. Plaintiff and members of the Class purchased Milk Products sold by Wild Oats that were falsely represented for an amount higher than conventional Milk Products.

401. As a result of Wild Oats' conduct, Plaintiff and the members of the Class were damaged.

402. Wild Oats' conduct showed complete indifference to or conscious disregard for the rights of others such that an award of punitive damages is appropriate.

**COUNT 23: Breach of Express Warranty**
**(Brought on behalf of the Wild Oats Purchaser Class)**

1

2    403.    Plaintiff Benya incorporates by reference the preceding paragraphs as if they were

3    fully set forth herein. In addition and/or in the alternative to the Count(s) above, Plaintiff brings

4    this Count on her own behalf under the law of the state in which she purchased Milk Products sold

5    by Wild Oats on behalf of: (a) all other persons who purchased Milk Products sold by Wild Oats

6    in the same state as Plaintiff purchased such products; and (b) all other persons who purchased

7    such products in states having similar laws regarding express warranty.

8    404.    Wild Oats' representations are made to Plaintiff and members of the Wild Oats

9    Purchaser Subclass at the point of purchase, are part of the description of the goods and the bargain

10   upon which they are offered for sale and purchased by Plaintiff and the members of the Class.

11
12   405.    In addition or in the alternative, Wild Oats' representations are made to induce

13   Plaintiff and the members of the Class to rely on such representation, and Plaintiff and the

14   members of the Class did so rely (and should be presumed to rely) on said representation as a

15   material factor in his/her decision to purchase the Milk Products sold by Wild Oats.          .

16
17   406.    By its statements and representations, Wild Oats expressly warranted that the Milk

18   Products complied with the representations Wild Oats made about the products and the manner in

19   which they were produced.

20   407.    The Milk Products sold by Wild Oats did not, in fact, comply with the

21   representations Wild Oats made about the products and the manner in which they were produced.

22   408.    At all times relevant to this action, Wild Oats falsely represented the Milk Products

23   and the manner in which the products were produced in breach of these express warranties.

24
25   409.    As a result of Wild Oats' conduct, Plaintiff and the members of the Class were

     damaged.
26

27   410.    Within a reasonable time after they knew or should have known of such breach,

28   Plaintiff, on behalf of herself and members of the Class, placed Wild Oats on notice thereof.

COMPLAINT                                        - 70 -

010004-10 410178 V1

1

2

## COUNT 24: Breach of Implied Warranty of Merchantability
(Brought on behalf of the Wild Oats Purchaser Class)

3

411.    Plaintiff Benya incorporates by reference the preceding paragraphs as if they were

4    fully set forth herein. In addition and/or in the alternative to the Count(s) above, Plaintiff brings

5    this Count on her own behalf under the law of the state in which she purchased Milk Products and

6    sold at Wild Oats on behalf of: (a) all other persons who purchased Milk Products sold by Wild

7    Oats in the same state as Plaintiff purchased such products; and (b) all other persons who

8    purchased such products in states having similar laws regarding implied warranty.

9

412.    By representing that the Milk Products were produced in a particular way, Wild

10

11    Oats impliedly warranted that such products were of merchantable quality, such that the Milk

12    Products were of the same average grade, quality, and value as similar goods sold under similar

13    circumstances.

14

413.    At all times material to this action, the Milk Products were not of merchantable

15    quality.

16

414.    Wild Oats held itself out to, and did, possess expertise, skill and knowledge superior

17
to consumers including Plaintiff and the members of the Class, who had a right to rely thereon.

18

19

415.    As a result, Plaintiff and the members of the Class have been damaged.

20

416.    Within a reasonable time after they knew or should have known of such breach,

21    Plaintiff, on behalf of herself and members of the Class, placed Wild Oats on notice thereof.

22

23

## COUNT 25: Negligent Misrepresentation
(Brought on behalf of the Wild Oats Purchaser Class)

24

417.    Plaintiff Benya incorporates by reference the preceding paragraphs as if they were

25    fully set forth herein. In addition and/or in the alternative to the Counts above, Plaintiff brings this

26    Count on her own behalf under the law of the state in which she purchased Milk Products sold by

27    Wild Oats on behalf of: (a) all other persons who purchased Milk Products sold by Wild Oats in

28

COMPLAINT                                    - 71 -

010004-10 410178 V1

the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligent misrepresentation.

418.    Wild Oats owed a duty to Plaintiff and the members of the Class to exercise reasonable care in making representations about its Milk Products.

419.    Wild Oats negligently and recklessly made such representations and omitted to disclose material facts to Plaintiff and the Class through uniform mislabeling, non-disclosure and concealment through mass media and point-of-sale advertising, and through other information prepared or disseminated by Wild Oats or at its direction.

420.    Wild Oats' representations and omissions regarding its Milk Products were material.

421.    Wild Oats' mislabeling, misrepresentations and non-disclosures were intended to influence consumers' purchasing decisions.

422.    Plaintiff and the members of the Class reasonably relied (or should be presumed to have relied) on the labeling and other representations Wild Oats made regarding its Milk Products.

423.    Wild Oats knew or should have known that Plaintiff and the members of the Class relied (or should be presumed to have relied) upon the labeling, representations and omissions of Wild Oats.

424.    Wild Oats' representations and omissions regarding its Milk Products were false and misleading as alleged above.

425.    As a result of these misrepresentations, omissions and concealment, Plaintiff and the members of the Class have been damaged in an amount to be proven at trial.

426.    As a result of Wild Oats' conduct, Plaintiff and Class members were damaged and are therefore entitled to compensatory damages, multiple damages, and equitable relief.

**COUNT 26: Unjust Enrichment**
**(Brought on behalf of the Wild Oats Unjust Enrichment Class)**

COMPLAINT                                              - 72 -

010004-10 410178 V1

1    427.   Plaintiff Benya incorporates by reference the preceding paragraphs as if they were

2    fully set forth herein. In addition and/or in the alternative to the Counts above, Plaintiff brings this

3.   Count on her own behalf under the law of the state in which she purchased Milk Products sold by

4    Wild Oats on behalf of: (a) all other persons who purchased Milk Products sold by Wild Oats in

5    the same state as Plaintiff purchased such products; and (b) all other persons who purchased such

6

7    products in states having similar laws regarding unjust enrichment.

8    428.   Wild Oats markets and promotes the production process for the Milk Products as

9    having health, environmental and other benefits warranting a higher retail price than

10   conventionally produced milk products.

11   429.   Wild Oats charges, and consumers pay, a higher retail price for the Milk Products

12   sold by Wild Oats than the price of conventionally produced milk products.

13

14   430.   Wild Oats received a benefit in the form of the price charged by Wild Oats and paid

15   by Plaintiff and the members of the Class for the Milk Products sold by Wild Oats.

16   431.   Under the circumstances, it would be inequitable for Wild Oats to retain the above-

17   described benefit.

18   432.   As a result of Wild Oats unjust enrichment, Plaintiff and the members of the Class

19   were damaged in an amount to be determined at trial and seek full disgorgement and restitution of

20   Wild Oats' unjust enrichment.

21

22                          **VII.   PRAYER FOR RELIEF**

23           WHEREFORE, Plaintiffs, individually and on behalf of the Classes they seek to represent,

24   respectfully request that the Court enter an order or judgment in their favor and against Defendants,

25   including the following:

26

27

28

COMPLAINT                                              - 73 -

010004-10 410178 V1

1  A. Certifying the action as a Class Action pursuant to Rule 23(b)(3) of the Federal

2  Rules of Civil Procedure, and appointing Plaintiffs as Class Representatives and their counsel of

3  record as Class Counsel;

4  B. Awarding actual damages, statutory damages, punitive or treble damages, and such

5

6  other relief as allowed by applicable state law ;

7  C. Awarding pre-judgment and post-judgment interest on such monetary relief;

8  D. Awarding equitable relief in the form of restitution, to restore monies received by

9  Defendants as a result of the unfair, unlawful and/or deceptive conduct alleged in herein;

10  E. Awarding Plaintiffs the costs of bringing this suit, including reasonable attorneys'

11  fees; and

12  F. Awarding all such other relief to which Plaintiffs and the members of the Classes

13

14  may be entitled at law or in equity.

15  Dated: November 22, 2010                          Respectfully submitted,

16

17                                                     By

18                                                     Shana E. Scarlett (217895)
                                                       HAGENS BERMAN SOBOL
19                                                     SHAPIRO LLP
                                                       715 Hearst Avenue, Suite 202
20                                                     Berkeley, CA 94710
                                                       Telephone: (510) 725-3000
21                                                     Facsimile: (510) 725-3001
                                                       E-mail: jefff@hbsslaw.com
22                                                            shanas@hbsslaw.com

23                                                     Elizabeth A. Fegan
                                                       Daniel J. Kurowski
24                                                     HAGENS BERMAN SOBOL
                                                       SHAPIRO LLP
25                                                     1144 W. Lake St., Suite 400
                                                       Oak Park, IL 60301
26                                                     Telephone: (708) 628-4949
                                                       Facsimile: (708) 628-4950
27                                                     E-mail: beth@hbsslaw.com

28

COMPLAINT                                    - 74 -

010004-10 410178 V1

1        dank@hbsslaw.com

2        Steve W. Berman
         Craig R. Spiegel
3        HAGENS BERMAN SOBOL
         SHAPIRO LLP
4        1918 Eighth Avenue, Suite 2300
5        Seattle, WA 98101
         Telephone: (206) 623-7292
6        Facsimile: (206) 623-0594
         E-mail: steve@hbsslaw.com
7                craig@hbsslaw.com

8        Don Downing
9        Gretchen Garrison
         Thomas Neill
10       GRAY, RITTER & GRAHAM, P.C.
         701 Market Street, Suite 800
11       St. Louis, MO 63101-1826
         Telephone: (314) 241-5620
12       Facsimile: (314) 241-4140
13       E-mail: ddowning@grgpc.com
                 ggarrison@grgpc.com
14               tneill@grgpc.com

15       Adam J. Levitt
16       John E. Tangren
         WOLF HALDENSTEIN ADLER
17       FREEMAN & HERZ LLC
         55 West Monroe Street, Suite 1111
18       Chicago, Illinois 60603

19       Curtis F. Gantz
20       David G. Cox
         LANE ALTON & HORST LLC
21       Two Miranova Place, Suite 500
         Columbus, OH 43215
22       Attorneys for Plaintiffs

23

24

25

26

27

28

COMPLAINT                          - 75 -

010004-10 410178 V1